[Crim. No. 16321. Second Dist., Div. Five. May 13, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS WILSON BAXTER, Defendant and Appellant.

## Counsel

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marilyn Mayer, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**KAUS, P. J.**—After a jury trial defendant was convicted of robbery in the first degree. There was no finding on the truth of a prior conviction charged in the information. On motion of the People, the allegation in the information that defendant was armed, was stricken. Probation was denied and defendant was sentenced to prison for the term prescribed by law. He appeals from the judgment of conviction. A motion under section 1538.5 of the Penal Code was made and heard before trial. It was denied.

### The Facts

Since no question of the sufficiency of the evidence has been raised on appeal, the facts of the robbery can be recounted briefly.

At about 11 a.m. on June 17, 1968, defendant, who was armed with a pistol, walked into the office of the Luau restaurant in Beverly Hills and informed the five employees in the office that "this is a holdup; don't anybody move." The office is located above the restaurant, part way to the top of a metal stairway which passes up the outside of the building. The stairs constitute the only entrance to the office. The office door was open when defendant entered. Waving the pistol around, defendant walked to one desk and stuffed loose currency into the pockets of a black leather jacket he was wearing. He grabbed two canvas money bags containing

currency. Then defendant backed up to the office door and told the employees not to follow him down the stairs. After attempting unsuccessfully to close the door, he fled down the stairway. At the foot of the steps defendant was joined by a man wearing a blue sport jacket. The two men fled. The robbery took only two to five minutes.

At the trial the victims described the robber as a Negro who was clad in a light shirt and dark pants. The leather jacket he wore was open. The robber had a mustache which descended around each side of his mouth to his chin, where it grew into a goatee. Two employees testified that he was wearing dark glasses; another said he was not. All agreed he was not wearing a mask.

As soon as the robber had departed, one of the victims pressed an alarm button located underneath his desk and connected with the Beverly Hills Police Department.

Additional facts will be mentioned in connection with our discussion of the issues raised on appeal.[1]

## I.

After defendant's arrest he made certain incriminating statements to police officers. The evidence with respect to whether or not he knowingly and intelligently waived his right not to be questioned over his objection is conflicting. Counsel admits that if the police testimony is believed, the trial court's finding of a waiver is supported by evidence. He points, however, to the fact that in *Miranda* v. *Arizona,* 384 U.S. 436, 475 [16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 10 A.L.R.3d 974], the Supreme Court refers to the "heavy burden" which rests on the government if it sets out to prove a knowing and intelligent waiver. He suggests that thereby the Supreme Court indicated that uncorroborated police testimony concerning a waiver is insufficient as a matter of law. He submits that *Miranda* demands that waivers be taken down by a court reporter or that they be tape recorded.

It is not for this court to enlarge upon the rights recognized in *Miranda.* We note that the precise problem raised by counsel was mentioned by Justice Harlan in his dissent in *Miranda:* "Those who use third-degree tactics and deny them in court are equally able and destined to lie as skillfully about warnings and waivers." (384 U.S. at p. 505 [16 L.Ed.2d at p.

---

[1]Appointed counsel has only raised the question whether the evidence that defendant knowingly and intelligently waived his so-called *Miranda* rights is constitutionally adequate. The issues relating to the illegality of a "search" of the car in which defendant was riding after the robbery and the admissibility of the courtroom identification by three of the witnesses are raised by defendant in supplemental briefs filed in pro. per. by permission of the court.

741].) Surely, had the majority intended that normal methods of proof were to be insufficient in the area of warnings and waivers, here was a pointed stimulus for saying so.

## II.

At the outset of the trial the defense moved to suppress certain evidence which was seized from an automobile in which defendant was riding as the rear seat passenger shortly after the robbery. The evidence consisted of loose currency and two canvas money bags which were plainly visible, without a search, on the floor behind the front seat. The only question, therefore, is whether the police had a right to stop the car. They plainly did.

At the time of the robbery Officer Carney, who was on patrol in a police car, received two radio calls. The first informed him of the fact of a robbery; the second reported a "suspect described as a male Negro, tall, thin, wearing a black leather jacket with a goatee, running eastbound on Santa Monica [Boulevard] from Rodeo." As the officer drove northbound on Canon Drive, two blocks east of Rodeo, he saw a car ahead of him. It accelerated rapidly. Carney followed and saw two male Negroes in the front seat. The car then made a right-hand turn onto Brighton Way and a left-hand turn into a one way alley "going the wrong way." At that time a third bearded Negro wearing a black leather jacket appeared in the back seat and pointed what looked like a gun at the officer. Then there followed a chase through various streets in Beverly Hills during which the suspect automobile at times reached a speed of 70 miles per hour. During the chase Officer Carney informed other patrol cars of these happening on the police radio. The car was finally stopped at the intersection of La Peer and Wilshire where the articles in question were observed. It appears from the record that the actual stop of the suspect car was made by other officers who did not testify on the issue of the illegality of the search. There is, however, a fair inference from Officer Carney's testimony that they stopped the car in which defendant had been riding as a response to Carney's broadcasts. Obviously Carney had probable cause to ask for assistance in the stop, based merely on what he personally had observed.[2]

---

[2]At the section 1538.5 hearing the public defender correctly urged that the People had offered no evidence that the broadcasts informing Carney of the robbery had their origin in the report by the victims to the anonymous officer who made the broadcasts. (The evidence concerning the pressing of an alarm button by one of the victims came in much later.) We therefore consider the legality of the stop solely from the point of view of Carney's personal knowledge. (See *People* v. *Adkins,* 273 Cal. App.2d 196 [78 Cal.Rptr. 397].)

## III.

■ Defendant claims that he was put through an illegal lineup and that the courtroom identification by three of the victims was tainted thereby.

The prosecution did not attempt to contradict defendant's version of the lineup.[3]

According to defendant he and his two arrestees, over their objection, were placed in a lineup without any advice concerning their right to counsel. Defendant could not see who was viewing him. He did hear someone say: "That's him. That's the fellow." After the lineup he saw and heard an Oriental gentleman talking to a police officer and recognized his voice as being that of the person who had identified him.[4]

When defendant appeared for his preliminary hearing the Oriental gentleman was in the courtroom and appeared to be talking to the victims while pointing at defendant. The preliminary hearing was continued. On the date when the hearing was actually held the Oriental was again in the courtroom sitting with and talking to the victims.

Each victim who testified denied having attended a lineup and claimed in the most positive manner to be able to identify defendant from his courtroom appearance. None of those asked admitted to any coaching. All admitted having seen defendant at the preliminary hearings but claimed to have recognized him spontaneously when he appeared in the courtroom.

The trial court meticulously investigated the purity of the courtroom identifications. It found them to be untainted. Obviously its finding is supported by very substantial evidence.

■ Defendant makes one further point: he claims that the two preliminary hearings were, in themselves, illegal "lineups" in which his very appearance as a prospective defendant constituted impermissible suggestion.

We need not deny that a courtroom confrontation between a witness and a suspect may violate the rules of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]. In *Mason* v. *United States,* 414 F.2d 1176 it was so held with respect to a lineup in which the defendant was

---

[3]Nevertheless the court's overruling of the objection to the courtroom identification by the first victim, a Miss Prince, possibly indicates some doubt that it unquestioningly believed defendant.

[4]One of the victims at the robbery who testified at the trial was a Mr. Byung L. Chang, apparently an Oriental. Defendant specifically denied that Chang was the person he had seen after the lineup.

not represented by counsel. The record in the case at bar is silent on whether or not defendant was so represented on the two occasions in question. This does not, however, dispose of the problem. The thorough examination of the identification witnesses with respect to any impermissible influences was more than adequate to cover not only the suggestion that they had been coached by the mysterious Oriental who had been at the supposedly illegal lineup, but also that they had been influenced by defendant's previous courtroom appearances.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.

A petition for a rehearing was denied June 4, 1970 and appellant's petition for a hearing by the Supreme Court was denied July 8, 1970.