[Crim. No. 18867. Second Dist., Div. Four. Jan. 10, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH HENRY GUERIN, Defendant and Appellant.

## COUNSEL

John Guerin for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Donald J. Oeser and William K. McCallister, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant was charged with robbery of four victims, in violation of section 211 of the Penal Code; it was alleged that he was armed at the time of the offense. After a trial by jury, he was found guilty as charged; his motion for a new trial was denied; he was sentenced to state prison, the sentences on each charge to run concurrently. He has appealed; we modify the judgment and affirm it as modified.

### I

Defendant contends that the trial court lacked jurisdiction because the preliminary examination was conducted in such a manner as to deny him a fair hearing. That contention amounts to a claim that he was not legally committed. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874 [59 Cal.Rptr. 440, 428 P.2d 304].) That identical contention was raised by defendant and was determined against him, expressly "on the merits," in *Guerin* v. *Superior Court* (1969) 269 Cal.App.2d 80 [75 Cal. Rptr. 923].[1] It is not again available to him on this appeal.

---

[1] We have examined the record in that case. The contention and argument are identical with those now made on this appeal.

## II

It is not contended that a robbery did not take place as alleged; the issue before the trial court was that of identity of the robber.

■ Defendant contended in the trial court, and contends here, that his identification by photographs was conducted in such a manner as to be inherently unfair and suggestive. The trial court conducted an extensive hearing on that issue. We have reviewed the record of that hearing. We cannot say that the trial court's determination, adverse to defendant, was without substantial support in the evidence. Under those circumstances, the trial court finding is binding on us. (*People* v. *Hawkins* (1970) 7 Cal. App.3d 117 [86 Cal.Rptr. 428]; *People* v. *Neal* (1969) 271 Cal.App.2d 826 [77 Cal.Rptr. 65].)

Defendant's other objections to the identification process have all been considered and rejected in prior decisions. We need not repeat here the reasoning involved. (Consult: *People* v. *Lawrence* (1971) 4 Cal.3d 273, 279-280 [93 Cal.Rptr. 204, 481 P.2d 212]; *People* v. *Baxter* (1970) 7 Cal.App.3d 579, 585 [86 Cal.Rptr. 812]; *People* v. *Lyons* (1970) 4 Cal. App.3d 662, 667 [84 Cal.Rptr. 535].)

## III

Originally defendant was charged in count I only with the robbery of Harry Simon, and in counts II, III, IV and V with kidnaping Simon and three other persons for the purpose of robbery. Those other persons were: Harry Reifel, the liquor department clerk, David Hassan, a box boy, and Vera Ward, a checker. Thereafter the kidnaping counts were dismissed and count I was amended to add the names of the persons formerly named as victims in the kidnaping counts as additional robbery victims.[2] It also was charged that defendant was armed with a concealable deadly weapon, to wit, a revolver. The record shows that defense counsel was offered his election to have the amendment add three additional counts or to have a single count with three additional victims. He elected the form used. Under these circumstances, defendant is not now in a position to complain that the pleading was in an improper form.

■ However, at the close of the trial, the court gave to the jury several sets of verdict forms—two sets for each of the alleged victims. Separate but concurrent sentences were pronounced. Defendant now contends that that was error. We agree in part.

---

[2]There was no error in allowing an amendment at that time. Not only did defendant not object, but the amendment clearly satisfied the requirements of section 739 of the Penal Code as construed in *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241].

For many years, it was regarded as a settled rule that a defendant who had committed offenses against several victims during a single transaction could be convicted and punished separately for each such victim. (2 Witkin, Cal. Crimes (1963) § 954, pp. 908-909.) In *People* v. *Bauer* (1969) 1 Cal. 3d 368 [82 Cal.Rptr. 357, 461 P.2d 637], the Supreme Court had occasion to re-examine the rule. The pertinent language (pp. 377-378) is as follows: "A number of cases have upheld multiple punishment for a single criminal transaction where crimes of violence were committed against different persons. (*In re Ford,* 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681] [kidnaping for purposes of robbery and robbery]; *In re Wright,* 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998] [robbery and kidnaping]; *People* v. *Ridley,* 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124] [robbery and assault]; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 21 [9 Cal.Rptr. 607, 357 P.2d 839] [attempted murder of two victims]; *People* v. *Knowles, supra,* 35 Cal.2d 175, 189 [217 P.2d 1] [two kidnapings]; *People* v. *Brannon,* 70 Cal.App. 225, 235 [233 P. 88] [murder and assault with a deadly weapon].)

"Where, however, the offenses arising out of the same transaction are not crimes of violence but involve crimes against property interests of several persons, this court has recognized that only single punishment is permissible. Thus, this court has pointed out that the theft of several articles at the same time constitutes but one offense although such articles belong to several different owners. (*People* v. *Smith,* 26 Cal.2d 854, 859 [161 P.2d 941]; cf. *People* v. *Lyons,* 50 Cal.2d 245, 275 [324 P.2d 556] [receiving stolen goods belonging to two owners].) This view has been followed '[i]n the vast majority of cases' where it has arisen or been discussed. (Annot. 28 A.L.R.2d 1182, 1184 et seq.) If the rule were otherwise a burglar who entered an empty house and took numerous articles belonging to one person could be punished for only one offense, but if some of the articles belonged to each of the other members of the family, the burglar could be given consecutive sentences for as many offenses as there are members of the family. The situation would be even more anomalous where stolen property was owned jointly or by a partnership.

"The crime of automobile theft is not a crime of violence but is a violation of property interests, and we are satisfied that the proscription against double punishment precludes punishment for this offense in the circumstances of the present case. *People* v. *Churchill,* 255 Cal.App.2d 448, 452 [63 Cal.Rptr. 312], which involved burglary and automobile theft is disapproved insofar as it is contrary to the views expressed herein." Unlike car theft, which was involved in *Bauer,* robbery is, by definition, a crime of violence. We can see nothing in the *Bauer* opinion, therefore, to change the long-standing doctrine about multiple victims.

In *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75 [95 Cal.Rptr. 547], and in *People* v. *Moore* (1971) 20 Cal.App.3d 444 [97 Cal.Rptr. 601], it was held that, in a prosecution for drunk driving with resultant personal injury, in violation of section 23101 of the Vehicle Code, there was only a single offense—and therefore only a single sentence and penalty could be imposed—no matter how many persons were injured. The rationale of that holding was expressed in *Lobaugh* in the following words (at pp. 79-80): "We have concluded that a person who has violated section 23101 whether one, or several, persons be injured thereby, has committed but one offense. Unlike the usual 'multiple victim' case, here the fundamental concern of the state is not the outrage done the victims, but rather the prevention of 'drunken driving' and the punishment of those who so conduct themselves. It was said in *People* v. *Chatham,* 43 Cal.App.2d 298, 300 [110 P.2d 704] (referring to Veh. Code, § 501, predecessor to section 23101), '. . . it is not the receiving of the injury that concerns the state, but the *causing* of such injuries which the state seeks to minimize.' The unlawful act denounced by the Vehicle Code is the 'mere act of driving a vehicle upon a public highway while intoxicated'; the act is either a misdemeanor (Veh. Code, § 23102, formerly § 502), or a felony (Veh. Code, § 23101, formerly § 501), depending on whether personal injuries resulted therefrom. (See *People* v. *Thurston,* 212 Cal.App.2d 713, 717 [28 Cal.Rptr. 254]; *In re Ryan,* 61 Cal.App.2d 310, 313 [142 P.2d 769]; *People* v. *Levens,* 28 Cal.App.2d 455, 459 [82 P.2d 698]; *People* v. *Freeman,* 16 Cal. App.2d 101, 103 [60 P.2d 333].) The felony section (Veh. Code, § 23101, formerly § 501) simply 'graduate[s] the punishment according to the [more serious] consequences of the forbidden act. . . .' (*Layport* v. *Rieder,* 37 Cal.App.2d Supp. 742, 746 [94 P.2d 96], disapproved on other grounds in *Heald* v. *Friis-Hansen,* 52 Cal.2d 834, 839 [345 P.2d 457].)"

The problem that confronts us in the case at bench arises from the fact that robbery is a compound crime, including the elements of both theft and of assault. (77 C.J.S. (1952) Robbery, § 1, p. 447.) As a result, it has been classified by some authorities as a crime against the person,[3] other writers emphasize the property aspect of the crime,[4] while one authority,

---

[3]"Robbery is a crime of violence, and is in the category of crimes against the person. . . . Including all the elements of larceny, with the element of force or fear added, the crime of robbery may be defined as a combination of larceny and assault." (43 Cal.Jur.2d, Rev. (1966) Robbery, § 2, pp. 25-26.)

"The essence of the crime of robbery is the violence to the person." (May's Criminal Law (4th ed. by Sears & Weihofen, 1938) § 195, p. 300.)

[4]"[Robbery] is an aggravated form of larceny, and is a crime both against the person and against property." (Hughes on Criminal Law and Procedure (1919) § 575, p. 391.)

"[Robbery] is said to be a crime against property and an aggravated form of

with stricter accuracy, classifies it separately as a "compound larcency."[5] It is grouped, in our Penal Code, in title 8 of part 1, as a crime against the person. It follows that we cannot say, as did the *Lobaugh* court above quoted, that the major purpose of the statute against robbery was to prevent the basic act, with the personal harm operating merely to aggravate the penalty. Clearly, the common law and our Legislature desired to deter not only theft but personal harm.

As to three of the alleged robbery victims we have no difficulty in reaching a conclusion. Reifel had control over his own cash register; the money taken from it was, under all the authorities, a robbery of him and properly was so charged. Miss Ward also presided over a separate cash register and had control over its contents; she was the victim both of a separate taking and of a separate assault; it was entirely proper to treat that as a separate crime with a separate victim.

The theory as to Hassan, the box boy, and as to Simon, the store manager, is that each had constructive possession of the money under the immediate domination of Reifel and Ward. Insofar as Hassan is concerned, that theory lacks support in the record. We can find nothing, other than that he was a co-employee of the other three, to suggest that he had any dominion or control whatsoever over any money. As to him there was no taking and, thus, no robbery.

The real problem is over the charge involving Simon. We have no doubt that the original charge naming him was, on the record, quite proper. As manager he was in at least constructive possession of all the money in both registers; he clearly was the victim of an assault. But when the prosecution elected to charge Reifel and Miss Ward as additional victims of the takings, it found itself in the position of charging two robberies for each taking. It is clear from the quotation from *Bauer, supra*, that, had defendant been guilty only of theft, such a result could not have been permitted. We do not think that it can be permitted here. Therefore, the sentence on the robbery charge against Simon cannot stand.

██ That does not mean that defendant cannot be punished, on this record, for his conduct with reference to Hassan and Simon. Assault with a deadly weapon is an offense included within the crime of robbery in the first degree. All of the elements of that "lesser" offense were charged

larceny, but it is also a crime against the person." (Miller on Criminal Law (1934) § 123, p. 391.)

[5]"Compound larceny is larceny committed under certain aggravating circumstances, by reason of which it is punished more severely than simple larceny. Thus— 1. At common law, robbery is a compound larceny. . . ." (Clark & Marshall, The Law of Crimes (2d ed. 1927) § 337, p. 441.)

and proved. We reduce the convictions as to those two victims to violations of subdivision (a) of section 245 of the Penal Code.

## IV

█ It is argued that defendant was denied his right to a speedy trial. We disagree. It is clear from the record that the trial date was continued because of delays, for which the prosecution was not to blame, involved in attempting to secure depositions and answers to interrogatories from witnesses out of the state on whom defendant relied in support of his alibi defense. While the clerk's transcript does not show, in every instance, that defendant had sought the continuances involved it is clear that they were for his benefit, that he did not at any time object, and that he suffered no prejudice.

█ With some inconsistence, defendant also argues that it was error to deny one motion for a continuance made by him. In view of the long delays otherwise involved, we cannot say that the trial court abused its discretion in this instance. (*People* v. *Johnson* (1970) 5 Cal.App.3d 851, 859 [85 Cal.Rptr. 485].) The efforts to produce alibi witnesses had resulted in the presence of two such witnesses at the trial and in answers to interrogatories from five more; further efforts could only have resulted in cumulative testimony. █ Nor was it an abuse of discretion to require the trial to proceed without review in the United States Supreme Court of defendant's motion to suppress testimony. We review that motion on this appeal and, as indicated below, find it to be without merit.

## V

█ Defense counsel sought from the trial court an order reimbursing him for expenses involved in securing the answers to interrogatories above mentioned. The request was denied. We cannot see, and counsel does not advise us, how that order prejudiced the defendant. The answers were secured and were used by defendant. Assuming that the People should pay these costs, the matter now is strictly between the attorney and the county; it is not involved in defendant's case.

## VI

On *voir dire*, defense counsel sought to interrogate veniremen on sundry issues of law. The trial court allowed a considerable leeway in such questioning but eventually shut counsel off, pointing out that it was the function of the court to instruct on the law. The rulings were, if anything, more favorable to defendant than he was entitled to. (*People* v. *Love* (1960) 53 Cal.2d 843, 851-852 [3 Cal.Rptr. 665, 350 P.2d 705].)

## VII

Defendant's counsel urges on us the novel contention that he was so incompetent at the trial level that he had reduced the trial to a farce and sham. We do not agree with counsel's self-deprecation. We have read the record, with particular attention to the instances of alleged incompetency to which counsel now refers. We agree with the comment of the trial court when this contention was urged on it: "I don't remember anything in the argument of counsel that indicated that any problem of misconduct on the part of the prosecution or any situation which attempted to indicate that Mr. Guerin, who has been practicing in this community for 22 years, is incompetent."

## VIII

The major thrust of this appeal lies in the denial of the motion to suppress certain evidence. Defendant was arrested at a motel near Los Angeles on charges disconnected with this case. The police were told that he had been using an automobile parked at the motel. Looking through the car window, the police were able to see brown money bags, fitting the description of the bags taken in the robbery herein involved; defendant met the description of the robber. The police then searched the car, finding some guns and ammunition. We agree that, tested by the opinions in *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 463 [29 L.Ed.2d 564, 581, 91 S.Ct. 2022], there was no emergent reason to search the car without a warrant. However, the money bags, having been seen without a search, were properly seized and introduced. The evidence relating to the guns and ammunition played so little part in the entire trial[6] that we can say, beyond any reasonable doubt, that the use of them did not contribute to the conviction.

## IX

We have considered the other contentions made by counsel for defendant and find them to be without merit. (1) The contention of misconduct by the prosecutor is not validly before us, since no objection on that ground was made in the trial court as to any of the instances cited. (*People* v. *Cruz* (1968) 260 Cal.App.2d 55, 58 [66 Cal.Rptr. 772]; *People* v. *Sparks* (1967) 257 Cal.App.2d 306, 310 [64 Cal.Rptr. 682].)

---

[6]The guns were used only to secure evidence that they resembled the weapon used by the robber. Similar testimony could have been secured by exhibiting any gun of similar appearance. The effect of the testimony was only to support the allegation that defendant had been armed at the time of the robbery. In light of the other evidence *as to identity*, the guns could have played only a minimal part on that issue.

(2) The instructions requested and refused either were adequately covered by other instructions or were not pertinent to any issue in the case. (3) There was no error in restricting cross-examination or in excluding certain testimony on the identification issue. The trial court was, if anything, overly patient with defense counsel; there comes a time when repetitive questioning may properly be limited. The excluded evidence went purely to collateral, and in some instances, to immaterial, matters and was properly rejected.

As indicated above, the judgment must be modified to remove reference to the alleged robbery of Hassan and Simon. A modification also is required to meet the requirements of *People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862].

The judgment is modified to read, in pertinent part, as follows: "Whereas the defendant, having been duly found guilty of the crime of robbery (Pen. Code, § 211), a felony, as to Harry Reifel and as to Vera Ward, as charged in count I of the Information as amended, which the jury found to be robberies of the first degree, and the jury having returned the same verdict and finding as to the offense of robbery charged in said count I as to Harry Simon and David Hassan, which offenses the court reduces to findings of guilty of Assault with a Deadly Weapon in violation of subdivision (a) of section 245 of the Penal Code (a lesser and necessarily included offense within the offense charged), and the jury and court having found that said defendant was armed with a deadly weapon—to wit, a revolver—within the meaning of section 1203 of the Penal Code (sections 3024 and 12022 of the Penal Code being inapplicable), It Is Therefore Ordered, Adjudged and Decreed that the said defendant be imprisoned in the state prison for the term prescribed by law, sentence on all four offenses to run concurrently."

As so modified, the judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied January 28, 1972, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1972. Peters, J., was of the opinion that the petition should be granted.