[Crim. No. 5312. Fourth Dist., Div. One. Nov. 12, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD SUTTON et al., Defendants and Appellants.

**COUNSEL**

Kenyon C. Keller and Joseph C. Gaidula, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Conrad D. Petermann and Richard Garske, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

AULT, J.—Defendants Charles Edward Sutton and Larry Decateur Arnold were convicted by a jury of three felonies arising out of the same transaction: robbery (Pen. Code, § 211), assault with a deadly weapon (Pen. Code, § 245, subd. (a)) and grand theft of a firearm (Pen. Code, § 487, subd. 3). The jury fixed the robbery at first degree, found both defendants used a firearm during its commission in violation of Penal Code section 12022.5 and found that Arnold intentionally inflicted great bodily harm on the victim in violation of Penal Code section 213. The jury also found both defendants to have been armed with a deadly weapon in violation of Penal Code section 12022 at the time of the firearm theft. The court sentenced defendants to prison on all charges but stayed execution of the grand theft and assault sentences pending any appeal and during service of sentence for the robbery, the stays to become permanent upon completion of the robbery sentences.

On appeal defendants contend: (1) the motions to suppress evidence under Penal Code section 1538.5 should have been granted, (2) their convictions of the assault and theft charges were for offenses necessarily included within the robbery conviction, and (3) the court should have given a cautionary instruction *sua sponte*. Arnold also claims his motion for a mistrial should have been granted.

### FACTS

In the early morning hours of June 5, 1972, Frederick Howard Loewke invited a black prostitute called Terry to his apartment at 2041 Albatross Street in San Diego, and became indebted to her in the amount of $20 for her services. Having only a $50 bill and three $1 bills in his possession, Loewke agreed to pay her the $20 the following evening. He later changed his mind when he awoke to find her about to walk out the door with his portable TV set. He retrieved the TV, told her now he would not pay her at all and made her leave.

At about 11 p.m. that night Terry returned and demanded the $20, putting her foot in the door so Loewke could not shut it. Suddenly a tall man appeared, brandishing an M-1 carbine rifle with a banana clip attached. This man was later positively identified as defendant Charles Edward Sutton. Loewke was ordered to go back into his apartment and there was searched by a second man called "Larry." Loewke was never able to see Larry's face but saw that he wore a red shirt and sneaker-type shoes. Terry picked up Loewke's $53 and his TV set and then left the room.

While Sutton held him at bay with the rifle, Loewke was forced to lie face down on the floor with his hands behind his back, and Larry removed his gold wristwatch. Next Loewke was ordered to stand and remove his pants. As he bent over to do so, Larry kicked him in the left eye, saying, "He told you to move faster." Loewke fell on the floor but was ordered to stand again. Larry found an unloaded .22 caliber pistol in the dresser drawer and proceeded to strike Loewke in the head with it, this time knocking him onto the bed. He tied Loewke's hands behind him with a belt, then changed weapons with Sutton, and went into the next room to look for more "stuff."

Now alone with Sutton, Loewke was struck again in the head with the pistol butt. Sutton told Loewke he was going to "get thirty rounds up [his] white ass for using a sister," and then played Russian Roulette with the pistol at Loewke's head. Next Loewke heard sounds coming from his closet and was asked if there was any more money around. He replied there might be some change in a shoe box, after which he heard some rummaging around and then saw a shoe box come flying onto the bed. By now Sutton had the rifle again, placed it to Loewke's temple, pulled back the bolt, and threatened to kill him "because [he] was white." Sutton told his companions to leave and then followed them.

The entire episode took 20 or 25 minutes. It took Loewke another 15 minutes to untie himself, dress, and reach a telephone to report the crime to the police.

About 11:40 p.m. San Diego Police Officer Jourdan, while on routine patrol in southeast San Diego, heard a police radio report of the robbery. One of the suspects was described as a male Negro 20 to 25 years of age, 6 feet 1 inch tall, thin, with short natural hair, wearing a black three-quarter-length jacket, black shirt and pants, and armed with an M-1 carbine rifle and two 15-inch clips taped together; the other male suspect was described as a 17- to 18-year-old Negro, 5 feet 7 inches or 5 feet 8 inches tall, medium short natural hair, wearing a red shirt and brown vest, and armed with a .22 caliber pistol and gun belt.

Upon hearing the broadcast, Officer Jourdan recalled he had recently seen an arrest report on a Charles Sutton who lived on his beat. He remembered Sutton was a tall Negro and that he had been arrested with an M-1 carbine with two clips of ammunition taped together. The police radio operator quickly supplied Sutton's address and also a description of his automobile and its license number. The address was 4285 Logan Avenue, which was four or five miles from the scene of the robbery.

Officer Jourdan immediately drove to the vicinity of Sutton's house and waited. At 11:57 p.m. he saw a Thunderbird automobile with two occupants drive into Sutton's driveway and park. Jourdan pulled his police car in behind the Thunderbird and turned on the red light. From this position he could see the two occupants were male Negroes and that the driver was tall and wearing dark clothing; he also noted the license number was Sutton's. While his partner, Officer Manke, went around to the passenger's side, Officer Jourdan, with his gun drawn, approached the driver's side. As he did, he saw inside the car, in plain sight, two clips of ammunition taped together (on the center console) and a pistol belt and holster (between the legs of the passenger). Jourdan opened the driver's door and ordered the driver out. The driver was Sutton and his passenger was Larry Decateur Arnold. Jourdan noted Sutton was very slim and wore a black three-quarter-length jacket over a black jumpsuit, that Arnold wore a red shirt and had medium short natural hair, and that they both fell within the age brackets given for the robbery suspects. After a patdown search for weapons, Sutton and Arnold were placed under arrest for the robbery.

After the arrests, the officers searched the entire automobile. In the trunk they found the M-1 carbine and the .22 caliber revolver; in the interior of the car they found many articles which belonged to Loewke: a tape recorder, binoculars, watches, lighters, and a canister of pennies. In Sutton's wallet the officers found a $50 bill; in Arnold's wallet they found three $1 bills.

### DISCUSSION

■ There is no merit to defendants' claim the trial court erred in denying their motions to suppress evidence. Circumstances short of probable cause to make an arrest justify police officers in temporarily detaining a person for questioning. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) The test is whether the circumstances known to the officer are such as to indicate to a reasonable person in a like position that such a course of conduct is necessary to the proper discharge of the officer's duties. If the investigation reveals probable cause to make an arrest, the officer may arrest the suspect and conduct a search incident to the arrest. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 450-451; *People* v. *Boyd,* 16 Cal.App.3d 901, 905 [94 Cal.Rptr. 575].)

Tested by this standard, Officer Jourdan's action was entirely proper. From hearing the police broadcast he knew a robbery had just been committed four or five miles away by a tall Negro armed with an M-1 carbine and two clips of ammunition taped together; from seeing the recent arrest report of Sutton, he knew Sutton matched this general description and possessed precisely such a weapon. While this alone would not constitute

probable cause to arrest Sutton for the crime, it certainly justified Officer Jourdan in going to Sutton's home and interviewing him as a possible suspect. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].) Interviewing Sutton and Arnold as they sat in a parked automobile outside Sutton's home was essentially no different. The information discovered during the detention provided probable cause to arrest the defendants and conduct the incidental search of the automobile for the fruits of the crime and the instrumentalities used to carry it out. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 450-451; *People* v. *Superior Court* [*Kiefer*], 3 Cal.3d 807, 812 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

Officer Jourdan is to be commended for his action, not criticized. His alert use of information which had legitimately come to his attention without transgressing upon defendants' constitutional rights is an example of outstanding police work.

The substantial issue raised by defendants is the claim that their convictions of assault with a deadly weapon and theft of a firearm were offenses necessarily included within the robbery conviction. We conclude defendants are correct with respect to the theft convictions but wrong as to the assault convictions.

■ Where an offense cannot be committed without necessarily committing another offense, the latter is an offense necessarily included in the former (*People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512]), and a defendant may not be convicted of both offenses (*People* v. *Bauer,* 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]).

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) ■ Robbery is a compound felony which includes all the elements of both theft and assault (*People* v. *Guerin,* 22 Cal.App.3d 775, 781 [99 Cal.Rptr. 573].)

■ The People seek to distinguish this case from the operation of the general rule prohibiting conviction for both the greater and lesser offense and to justify defendants' convictions of both robbery and theft on the basis of the particular kind of property taken. Since robbery can be committed without stealing a firearm, they argue that theft of a firearm was not an offense necessarily included in the robbery. ■ However, Penal Code section 211 requires only that personal property be taken; it makes no distinction either as to value or kind. If the other statutory requirements are met, robbery is completed when property of any value or character is taken from the victim.

■ Even though a special statute may define a theft of a particular kind of property as a felony, we are convinced such a theft remains a lesser included offense so as to bar a double conviction when it is accomplished by means of a robbery.

This conclusion finds support in *People* v. *Marshall,* 48 Cal.2d 394 [309 P.2d 456]. In *Marshall* a single-count information charged the defendant with robbery in that he "did willfully, unlawfully, feloniously and forcibly take from the person and immediate presence of Jack J. Martens . . . Seventy Dollars . . . and an automobile . . . ." The trial judge found the defendant guilty of "[v]iolation of 503 Vehicle Code, a felony, a lesser but necessarily included offense." The Supreme Court affirmed, holding that the car theft was an offense necessarily included in the robbery under the specific language of the accusatory pleading. In discussing the fairness of this standard, the court stated: "Conceivably, the prosecutor in the present case could have been even more precise than he was; he could have pleaded, in separate counts, robbery and grand theft by the taking of an automobile and violation of section 503 of the Vehicle Code (see Pen. Code, § 954), in anticipation that the evidence would show one or another of those offenses, *although defendant could be convicted of only one of them.*" (Italics added.) (*People* v. *Marshall,* 48 Cal.2d 394, 406 [309 P.2d 456].) In the context of the issue raised here, we see nothing to distinguish stealing guns from taking automobiles.

■ Although assault with a deadly weapon is by definition included within the crime of first degree robbery (*People* v. *Guerin, supra,* 22 Cal. App.3d 775, 781), it does not follow that all acts of violence committed in connection with a robbery fall into that category. Here, the assault conviction is justified by separate, distinct acts arising from motivation unrelated to the robbery. Even though the robbery was still in progress, kicking Loewke in the face, striking him on the head with the pistol "for using a sister" and pointing a loaded, cocked rifle at his temple "because [he] was white," were acts motivated by pure vengeance and were not in furtherance of an objective related to the robbery. These distinct acts of violence not incidental to the robbery, justify defendants' convictions for assault as well as robbery and would also support punishment for both crimes by separate sentences.[1] (*People* v. *Williams,* 244 Cal.App.2d 658, 663 [53 Cal.Rptr. 392]; *People* v. *Johnson,* 270 Cal.App.2d 204, 209 [75 Cal.Rptr. 605]; *People* v. *Birdwell,* 253 Cal.App.2d 621, 633 [61 Cal.Rptr. 536].)

---

[1]No question of double punishment in violation of Penal Code section 654 is presented because the trial court stayed execution of the sentences imposed on the assault convictions in accordance with the rules set down in *People* v. *Niles,* 227 Cal. App.2d 749, 755 [39 Cal.Rptr. 11].

Sutton's claim he did not participate in the acts of violence which constituted an assault beyond that incidental to the robbery, is without merit. Substantial evidence supports the conclusion both defendants participated in the vengeful beating of Loewke. In any event, the circumstances were such that each defendant is made responsible for the acts of the other by virtue of the provisions of Penal Code section 31.

■ Likewise unmeritorious is Sutton's contention his conviction should be reversed because the court erred in failing to give a *sua sponte* instruction that evidence of an oral admission must be viewed with caution. It is highly questionable whether there was evidence of an oral admission. The claim relates to an alleged conversation between Arnold and Sutton which took place in the county jail, and about which Arnold testified on rebuttal examination. Assuming Arnold's testimony concerning the conversation revealed an admission by Sutton, the evidence of the latter's guilt is so overwhelming it is not reasonably probable a result more favorable to Sutton would have been reached had the instruction been given. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ During trial Sutton's counsel asked Arnold on cross-examination whether he had made a deal with the prosecutor and Arnold replied, "Yes. . . . Five to life." The court sustained the People's objection, reprimanded Sutton's attorney for asking the question and instructed the jury to disregard the question and answer. Arnold's attorney later moved for a mistrial. The court denied the motion and later permitted additional questions to Arnold on the subject of promises of reward or immunity.

On appeal Arnold contends it was error to deny the mistrial because the damaging questions by Sutton's attorney were helpful to the prosecutor's case regardless of the court's admonition. He cites cases involving misconduct by prosecutors (*People* v. *Hamilton,* 60 Cal.2d 105, 116 [32 Cal.Rptr. 4, 383 P.2d 412]; *People* v. *Evans,* 39 Cal.2d 242 [246 P.2d 636]), and contends the same rationale should apply here.

As the Attorney General points out, the questions here were asked by counsel for Arnold's codefendant and not by the prosecutor. In any event, because of the court's timely admonition and the overwhelming evidence against Arnold, the testimony was not so prejudicial as to require a reversal. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

The convictions of both defendants of theft of a firearm (Pen. Code, § 487, subd. 3) are reversed. In all other respects the judgments are affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.