[Crim. No. 32328. Second Dist., Div. Five. Aug. 9, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES L. FREEMAN, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Edward H. Schulman and Michael S. McCormick, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—By jury trial appellant was convicted on three counts of robbery committed August 19, 1977. (Pen. Code, § 211.) As to each count it was found that he was armed with a firearm within the meaning of Penal Code section 12022. He was sentenced to state prison.

Appellant and another man committed the robberies in the office of a motel in Pasadena around 12:30 a.m. on August 19, 1977. The victims were Virginia Houck, the night clerk on duty; her husband, Richard

Houck, who was not employed by the motel but was accompanying Mrs. Houck; and Dawn Williams, a motel guest who registered just before the crimes occurred. Miss Williams was rummaging through her purse looking for telephone money when appellant and his companion came up to the desk and appellant began filling out a registration card. Miss Williams went to the pay phone in the hallway about 12 feet away, and with her back to the registration desk, made her call. Appellant gave a signal to his companion, who walked around the registration desk, leaned against Mrs. Houck, said, "Give me the money," and took approximately $200 from the till. Then one of the robbers ordered the Houcks to the end of the desk and out the door toward the hallway. One of them pressed a gun against Mr. Houck's back and threatened to shoot if he did not move faster.[1]

As the four passed Miss Williams in the hallway, appellant reached over her shoulder and grabbed her purse, which she had placed on the shelf under the telephone. She turned around to see what had happened, saw a gun and became frightened. Appellant and the other robber then left.

Around 11 o'clock later that morning appellant was arrested on an unrelated charge. Shortly before his arrest he threw to the ground Miss Williams' Princess Gardner wallet containing various credit cards and identification. When appellant was booked, Miss Williams' Timex watch was found in his pants pocket. The wallet and watch had been in her purse at the time it was taken from her at the motel.

Appellant's mother testified to an alibi defense that appellant was at home asleep at the time of the robbery. An expert examiner of questioned documents testified for the defense that the handwriting on the motel registration card could not be identified as appellant's. In rebuttal another examiner of questioned documents testified the handwriting on the card could have been appellant's, that many letters were similar to those on appellant's exemplars, and that there were signs of an attempt to disguise the handwriting on the card.

Appellant contends (1) that the trial court erred in admitting into evidence Miss Williams' wallet and watch; (2) that the conviction of robbery as to Mr. Houck must be reversed in the absence of evidence any money or property was taken from him or his possession; (3) that the trial court erred in failing to instruct sua sponte on the lesser included offense of theft as to Miss Williams; and (4) that the sentence should be modified.

[1]The witnesses were unable to state which robber had the gun.

## ADMISSION OF EVIDENCE

The evidence concerning seizure of Miss Williams' wallet is contained in the preliminary hearing transcript. From his vehicle across the street, an experienced narcotics officer, patrolling for persons under the influence, observed appellant at a hamburger stand. Appellant "appeared to be in a sedated condition, commonly known or referred to as on the nod." His head was dropping down and coming up. The officer approached appellant to investigate whether he was under the influence of a narcotic and appellant started to walk away. Appellant's slow and deliberate gait and his general demeanor additionally led the officer to form the opinion appellant was possibly under the influence. When the officer stated, "Police officer, halt," appellant dropped the wallet from his hand. The officer seized the wallet and placed appellant under arrest.

Just prior to resting at the preliminary hearing, the People moved that the wallet and contents be received into evidence. Defense counsel objected to the introduction of the exhibit on the ground there was an unlawful detention when the officer told appellant to stop. The magistrate stated: "The motion to introduce the evidence will be denied at this time." Appellant was nevertheless held to answer based on the other evidence.

█ Appellant did not make a motion in the superior court to suppress evidence under Penal Code section 1538.5. However, prior to trial he argued that the wallet was not admissible, on the ground that the statement of the magistrate at the preliminary hearing should be interpreted as an order granting a defense motion to suppress evidence and that the magistrate's ruling was binding because the People had not sought a de novo hearing in the superior court pursuant to subdivision (j) of section 1538.5. █ The trial court refused appellant's request to rule the wallet inadmissible, stating: "I have read the transcript with special emphasis on the part that you are making the matter concerned here, and it's my ruling that there was no 1538.5 motion at the preliminary hearing; there has been no 1538.5 motion and there has never been an order by the court suppressing that evidence."[2] We affirm the trial court's ruling.

---

[2]Appellant made clear that he was relying solely on the technical argument that the search and seizure issue was, in effect, res judicata. After his technical argument was overruled, he did not move to suppress the evidence in superior court. The record shows such motion would have been without merit. Although he was across the street in his vehicle, the officer observed appellant's head dropping as if appellant was in a sedated condition familiar to the experienced narcotics officer as typical of being under the

Penal Code section 1538.5, subdivision (a), authorizes a defendant to move for the return of property or to suppress evidence obtained as a result of unlawful search or seizure. Subdivision (f) states: "If the property or evidence relates to a felony offense initiated by a complaint, the motion may be made in the municipal or justice court at the preliminary hearing." Appellant cites that portion of subdivision (j) which states: "If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for the return or suppression of the property or evidence at the preliminary hearing is granted, and if the defendant is held to answer at the preliminary hearing, the ruling at the preliminary hearing shall be binding upon the people unless, upon notice to the defendant and the court in which the preliminary hearing was held and upon the filing of an information, the people within 15 days after the preliminary hearing request in the superior court a special hearing, in which case the validity of the search or seizure shall be relitigated de novo on the basis of the evidence presented at the special hearing. . . ." (See *Eiseman* v. *Superior Court,* 21 Cal.App.3d 342, 348 [98 Cal.Rptr. 342].)

 We hold the record supports the trial court's determination that subdivision (j) is inapplicable because appellant did not make a "motion for the return or suppression of the property or evidence at the preliminary hearing [which was] granted." Unless subdivision (j) so mandates, the magistrate's ruling at the preliminary hearing is not res judicata or collateral estoppel on the issue of the legality of the search. (*People* v. *Howard,* 62 Cal.App.3d 1019, 1023 [133 Cal.Rptr. 505].)

The statutory sanction which prevents the People from introducing relevant evidence in superior court because of a ruling by a magistrate at a preliminary hearing is a severe one. In order to invoke such severe sanction, there should be strict compliance by the defendant with subdivision (f) and an unambiguous ruling by the magistrate sufficient to put the People on notice that a de novo hearing in superior court must be sought. (See *People* v. *Como,* 49 Cal.App.3d 604, 609 [123 Cal.Rptr. 86] [Pen. Code, § 1203.2a].) The record at the preliminary hearing does not

---

influence. As the officer approached, appellant's gait and demeanor confirmed this suspicion. Under the circumstances, the officer had the right to order appellant to halt so that appellant's condition could be investigated. Appellant abandoned the wallet as the officer approached.

Miss Williams' watch was not offered as evidence by the prosecution at the preliminary hearing. At trial, the prosecution showed the watch was found in appellant's pocket at booking. Appellant unsuccessfully opposed its introduction on the theory that the magistrate *would have* suppressed it if *it had been* offered at the preliminary hearing.

satisfy this standard. Appellant did not make a formal motion under section 1538.5, subdivision (f), at the preliminary hearing giving the People notice that there would be any issue as to the validity of the seizure. He merely "objected" to the introduction of the exhibit after all the evidence was in. The magistrate's "ruling" was ambiguous. Appellant argues that an objection should be treated the same as a motion (citing *People* v. *O'Brien,* 71 Cal.2d 394, 403 fn. 5 [79 Cal.Rptr. 313, 456 P.2d 969]), and cites cases where an objection at a preliminary hearing was held sufficient to preserve a defendant's search and seizure argument for appeal. (*People* v. *Triggs,* 8 Cal.3d 884, 887-888 fn. 2 [106 Cal.Rptr. 408, 506 P.2d 232]; *People* v. *Myles,* 50 Cal.App.3d 423, 430 fn. 4 [123 Cal.Rptr. 348]; cf. *People* v. *Jenkins,* 13 Cal.3d 749, 753 fn. 4 [119 Cal.Rptr. 705].) However, *Triggs,* upon which *Jenkins* and *Myles* relied, was disapproved in *People* v. *Lilienthal,* 22 Cal.3d 891, 896-897 and footnotes 4, 5 [150 Cal.Rptr. 910, 587 P.2d 706]. In any event, when the severe sanction of subdivision (j) is involved, courts should require more strict formality. The trial court properly denied appellant's motion to give the magistrate's statement the effect of a binding order suppressing evidence.

### ROBBERY OF MR. HOUCK (COUNT III)

■ Appellant contends, and the People concede, that there is no evidence money or property was taken from the person or immediate possession of Mr. Houck, who was not a motel employee, and that therefore appellant's conviction of robbing Mr. Houck was improper. (*People* v. *Guerin,* 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573]; *People* v. *Higgins,* 28 Cal.App.3d 771, 775 [104 Cal.Rptr. 925].)

Although we are authorized by *Guerin* and *Higgins* to modify the robbery conviction to one of assault with a deadly weapon,[3] our power to do so is discretionary,[4] and under the facts and circumstances of this case we decline to do so.

---

[3]*People* v. *Driscoll,* 53 Cal.App.2d 590, 593 [128 P.2d 382]; *People* v. *Duncan,* 72 Cal.App.2d 423, 426 [164 P.2d 510]; see *People* v. *Blue,* 161 Cal.App.2d 1, 6 [326 P.2d 183]; *People* v. *Carter,* 275 Cal.App.2d 815, 822 [80 Cal.Rptr. 202]; *People* v. *Foss,* 85 Cal.App. 269, 272 [259 P. 123]; *People* v. *Sutton,* 35 Cal.App.3d 264, 270, 271 [110 Cal.Rptr. 635]; CALJIC (4th ed. 1979) appendix C (1979 Rev.), pages 339-340; Los Angeles Superior Court Criminal Trial Judges' Benchbook (1971) pages 258f-258g; cf. *People* v. *Amin,* 88 Cal.App.3d 637, 640 [152 Cal.Rptr. 9].

[4]*People* v. *Newman,* 5 Cal.3d 48, 55 [95 Cal.Rptr. 12, 484 P.2d 1356]; Penal Code sections 1260, 1181, subdivision 6.

### Lesser Included Offense as
### to Miss Williams (Count II)

■ Appellant contends the trial court erred in failing to instruct *sua sponte* on theft as a lesser included offense of the robbery of Miss Williams. Appellant contends the jury rationally could have concluded from the evidence that appellant used neither force nor fear in taking Miss Williams' purse and that he was guilty merely of a purse snatch rather than robbery. Therefore, he contends, the jury should have been instructed on this theory. We disagree.

After appellant reached over Miss Williams' shoulder and took her purse from the shelf underneath the telephone, she "turned to see what happened" and "saw a gun." After seeing the gun, she "went blank" and was "very scared." The only reasonable inference from this uncontradicted evidence is that Miss Williams did not attempt to retrieve her purse because she was placed in fear by the robbers and their gun.[5] Her purse was taken by means of fear, which is robbery, not mere theft. The evidence presented no valid basis for conviction of theft rather than robbery, and therefore the court was not required to instruct on theft. (*People* v. *Pruitt,* 269 Cal.App.2d 501, 508 [75 Cal.Rptr. 125]; *People* v. *Mills,* 73 Cal.App.3d 539, 545 [140 Cal.Rptr. 803].)

### Sentence

The jury found as to each of the three counts that appellant was armed with a handgun within the meaning of Penal Code section 12022 (subd. (a)). The court sentenced appellant to an upper term of four years in the state prison on count I (Mrs. Houck), plus one year for the enhancement under section 12022, for a total of five years. On counts II and III, the court sentenced appellant to the base term of three years, plus one year for the enhancement, for a total of four years, on each count, to be served concurrently with count I.

■ Appellant contends and the People concede that appellant may suffer only one enhancement pursuant to section 12022 where all the charged offenses are incident to one objective and effectively comprise an indivisible transaction. (*People* v. *Robinson,* 66 Cal.App.3d 624, 629-630

---

[5]Contrary to the assumption in appellant's argument, it is not important whether the gun was pointed at Miss Williams or was held by the other robber rather than appellant. In either case, Miss Williams was placed in great fear upon discovering that her purse was being taken in the course of an armed robbery of the motel clerk.

[136 Cal.Rptr. 127]; see *In re Culbreth,* 17 Cal.3d 330, 333-335 [130 Cal.Rptr. 719, 551 P.2d 23]; *People* v. *Miller,* 18 Cal.3d 873, 887-888 [135 Cal.Rptr. 654, 558 P.2d 552].)

Finally, appellant contends that under Penal Code section 4019 and the 1978 amendments to Penal Code section 2900.5, he is entitled to good-time/work-time credits on his prison sentence. This issue is currently before the state Supreme Court in *People* v. *Sage,* Crim. 20997, *People* v. *Brown,* Crim. 20998, and *In re Davis,* Crim. 20999*. Absent any controlling authority, we decline to modify the judgment on this ground.

The judgment as to count III is reversed. The judgment is modified to add that defendant shall serve only one additional period of imprisonment pursuant to the findings that as to all counts he was armed with a firearm within the meaning of Penal Code section 12022. As so modified, and in all other respects the judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied September 11, 1979, rule 27(e), California Rules of Court. Appellant's petition for a hearing by the Supreme Court was denied October 4, 1979.

---

*Reporter's Note: For Supreme Court opinion in *People* v. *Sage* see 26 Cal.3d 498. On June 18, 1980, *People* v. *Brown* and *In re Davis* were retransferred to the Court of Appeal for reconsideration in light of *People* v. *Sage.*