[Crim. No. 21658. Second Dist., Div. Four. Nov. 17, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL WAYNE HIGGINS, Defendant and Appellant.

(Consolidated Appeals.)

## COUNSEL

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Frederick R. Miller, Jr., and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.—**

### Case No. A-238196

In 1969, defendant Higgins was convicted of a violation of subdivision (b) of section 452 of the Penal Code. Proceedings were suspended and he was granted probation for five years. In 1971, as the result of his conviction in case No. A-064807, probation was revoked and he was sentenced to state prison, the sentence to run consecutively with that imposed in case No. A-064807.

He has appealed; we affirm. Although, as we point out below, we modify the judgment on one count in case No. A-064807, there is no reason to believe that that modification would cause any judge to do other than revoke probation and impose the sentence now before us.

### Case No. A-064807

Defendant was charged, jointly with James E. Portland, Jr., with two counts of robbery; the information charged the use of a pistol in the commission of the robberies. After a jury trial, both men were found guilty of robbery in the first degree, the allegation as to use of a pistol being found to be true. Defendant Higgins was sentenced to state prison, the sentence on the two counts to run concurrently, but consecutively with the sentence in case No. A-238196. He has appealed; we modify the judgment and affirm it as modified.

At about 1:30 p.m. on October 25, 1971, three Negro men, in a white Cadillac, drove into a parking lot on Sunset Boulevard; they sought and received permission to park the car there for five minutes. Two of them exited the car and walked in an easterly direction on Sunset; about ten minutes later the two men returned, "trotting," entered the Cadillac and the car drove off. The Cadillac belonged to codefendant Portland's father and one of the two men wore a jump suit similar to one admittedly owned by Portland.

At about the same time, two Negro men entered a shoe store on Sunset east of the parking lot. One of them was identified as Portland and Portland was wearing a jump suit.

Two young women were clerks in the store. One, Paula, approached Portland, whom she recognized as a former customer. Portland asked her to change a dollar bill, and she went to the cash register for that purpose. In the meantime, the other clerk, Carolyn, had been approached by the

second man, whom she identified as Higgins. Seeing Paula at the cash register, Carolyn asked what Paula was doing and was told that she was making change. When Carolyn looked up, she saw Higgins holding a pistol aimed at her. Carolyn's account of the subsequent events was as follows:

"Q. When you saw him pointing the gun at you, did you say anything?

"A. Well, I asked him what he wanted.

"Q. Did he respond?

"A. He said, 'You know what I want.'

"Q. And what did you do when he said that?

"A. Well, I looked at Paula and she said, 'He wants money,' and by that time he had walked around the desk in front of the desk.

"Q. What was the defendant Portland doing while Higgins held the gun at you?

"A. He was just standing there.

"Q. Did he look at anything in particular?

"A. He was watching what was going on.

"Q. Watching you and Miss Angelus?

"A. Yes.

"Q. Now, as Higgins and Portland stood there, what did you and Miss Angelus do?

"A. We were giving him the money.

"Q. Did you take some of the money yourself out of the cash drawer?

"A. Yes, I took the twenties and tens and Paula was giving me the fives and ones and I was putting them on top of the counter.

"Q. What happened after you put them on top of the counter?

"A. Well, Mr. Higgins stuck them into his pocket."

The two men left the store, heading west.

As we have indicated above, Paula was definite in her identification of Portland; she was unable to identify Higgins as the second robber. However, Carolyn was definite in her identification of Higgins and, on this appeal, it is not contended that her testimony does not support the finding that Higgins was the principal robber. The contentions now made to us are:

(1) That, under *People* v. *Guerin* (1972) 22 Cal.App.3d 775 [99 Cal. Rptr. 573], there was only one robbery; and

(2) That the trial court erred in admitting evidence as to Higgin's conduct during a period immediately prior to the robbery.

## I

■ We agree that Higgins could properly be convicted only of one robbery—that of Carolyn. Consequently, as we did in *Guerin,* we reduce the conviction on the other count to assault with a deadly weapon upon Paula.

In *Guerin,* defendant had held up a supermarket, taking money from two different cash registers, presided over by two different clerks. We sustained robbery convictions on separate counts involving each clerk, but reversed a robbery conviction naming the store manager. The case at bench is not one of two takings each from a different victim but a single taking from Carolyn out of a single cash drawer. While, under the authorities discussed by us in *Guerin,* the People might lawfully have convicted on a robbery from Paula, had she been selected by the People as the only victim, they cannot inflate this single robbery into two offenses merely because the loot passed (in part) through two innocent hands. We affirm the conviction on count I (which involved Carolyn); we reduce the conviction on count II (which involved Paula) to a violation of subdivision (a) of section 245 of the Penal Code.

## II

■ Higgins testified, denying participation in the robbery and tendering an alibi, supported by testimony from his family. The prosecution was allowed to examine him (a process in which the trial court actively participated) to show that he: (a) had a criminal record (see our discussion of case No. A-238196 above); and (b) that he was without funds. While some of that testimony might well have been omitted, the major purpose was to show that Higgins had a motive for robbery. Higgins was positively identified by Carolyn, who had him under direct observation for almost 15 minutes. Even without the questioned testimony, his conviction was assured. Whatever error was committed in admitting the testimony under attack, it was not prejudicial beyond any reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065].)

The judgment on count I is affirmed; the judgment on count II is modified by reducing the conviction to one of violation of subdivision (a) of section 245 of the Penal Code; as so modified, it is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied December 20, 1972.