[Crim. No. 19560. First Dist., Div. Two. Nov. 20, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WENDELL CHILDS et al., Defendants and Appellants.

COUNSEL

Marvin Rous and Carlo Andreani, under appointments by the Court of Appeal, for Defendants and Appellants.

Quin Denvir, State Public Defender, Michael S. McCormick, Deputy State Public Defender, and Ephraim Margolin as Amici Curiae on behalf of Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom, Steven H. Zeigen, Richard D. Garske, Michael D. Wellington, Steven V. Adler and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MILLER, J.—Wendell Childs and Michael Nelson appeal from a judgment of conviction based upon a jury verdict finding them guilty on multiple counts of robbery (Pen. Code, § 211) with firearm use (Pen.

Code, § 12022.5), assault with a deadly weapon (Pen. Code, § 467), attempted robbery (Pen. Code, §§ 211/664), and unlawful driving of a vehicle (Veh. Code, § 10851).

The facts reveal that around 11 a.m. on December 11, 1978, an individual wearing a ski mask and dark clothing entered the Bank of America at Stonestown Shopping Center in San Francisco and yelled, "Okay. Nobody move." Gun in hand, he positioned himself in the platform area and watched the customers. A second man with a ski mask, dark clothing, tennis shoes, green surgical gloves and carrying a gun and white pillowcase went to the teller's counter and leaped over the barrier. He pushed aside teller Ayala and took money from her cash box. The robber proceeded down the line of tellers, removing money from the open cash cans. The five tellers on duty remained in and around the area of their cash stations during this time. As the man in the platform area moved down the line of tellers, the other man moved through the lobby in a parallel fashion. The latter told two customers attempting to leave, "Don't you touch that back door," and proceeded towards them with a gun. The two men then fled through the northwest exit door.

An audit later revealed that five tellers had sustained losses: Irene Ayala, $2,497; Debbie Orlando, $1,271; Kimberly Miller, $1,715; Louis Quimson, $3,501; and Theresa Siragusa, $1,450.

After the duo exited the bank, maintenance supervisor Horton transmitted a report of the robbery over his radio. Assistant Patrol Officer Lowe, 100 feet away from the bank, turned in time to observe the 2 men running toward 19th Avenue, and followed in pursuit.

At 19th Avenue the pair split up. One of them, later identified as Michael Nelson, tried to stop vehicles by running into their paths. As he stood in the center lane, an oncoming truck owned by Cyrus Amirfar and loaned to Ninus Lazar and Albert Negoli came to a stop. Nelson pulled out his handgun and ordered the driver (Negoli) and the passenger (Lazar) to step out. Fearfully, they complied.

Nelson got in the truck and began driving toward Officer Lowe, who was positioned 40 feet away. As the truck approached Lowe, Nelson raised his hand from inside his coat. In response, Lowe fired one shot into the passenger side, but Nelson drove on.

Lowe immediately radioed the San Francisco police. This transmission was picked up by Officer McNerney, who spotted the vehicle and gave it high chase until the truck eventually slid to a stop. Nelson alighted on foot, despite an order to halt, but was eventually arrested.

The other man, later caught and identified as Childs, attempted a different escape. Mr. and Mrs. Floyd De'Eds were attempting to park their Volkswagen in the Stonestown parking lot when Mrs. De'Eds saw Childs running toward them. Mr. De'Eds was in the act of parking the car when the door flung open and a gun was pressed against his neck. Childs grabbed at Mr. De'Eds' chest and tried to pull him out of the car. Mrs. De'Eds grabbed the keys from the ignition and the car started to roll. Childs was thrown off balance, turned from the car and fled.

Meanwhile, Officer Winkler of the San Francisco Police Department, in response to a police broadcast, proceeded to the area of 19th Avenue. He observed Childs on 19th Avenue near the parking lot waving a gun in his hand. Officer Winkler hollered for Childs to drop the gun, but instead, Childs fled toward the Don Lucas Cadillac Agency.

Edward Washington was cleaning the back seat of a car on the lower floor of the agency when Childs entered. Childs placed a gun to Washington's neck and ordered him to give him the keys. Washington fell out of the car and threw his hands up. Childs pushed him against the wall.

Childs then ran up the back stairs to the upper level of the agency, got into a white Seville and started to drive the car. He slammed the car into some parked cars and a pillar. By this time the steel door in front of the dealership was shut so as to prevent Childs from escaping. Childs then drove down a ramp, hit another car, came to a cement wall and stopped. He exited the car and went into the polishing area. Officer Winkler found Childs there and ordered him to drop his gun. Childs hid behind a car but finally was arrested.

■ On appeal, appellants contend that separate convictions for each of five counts of robbery in the bank violate Penal Code section 654[1] proscribing multiple punishments for offenses arising out of a single transaction.[2] On the same theory, appellant Nelson separately chal-

[1]Unless otherwise indicated, all code sections hereafter will refer to the Penal Code.
[2]Section 654 of the Penal Code provides in pertinent part: "An act...which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one;..."

lenges his two robbery convictions for the forceful taking of the pickup truck from occupants Negoli and Lazar. We reject appellants' contention that section 654 proscribes multiple bank robbery convictions; however, for reasons other than those urged by Nelson, we find that the imposition of two robbery convictions for the truck robbery was erroneous.

Section 654 precludes multiple punishments, not multiple convictions, for a single act or indivisible course of conduct (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) There is, however, a clear exception to this rule: "Notwithstanding the foregoing determination that defendant entertained but a single principal objective during an indivisible course of conduct, he may nevertheless be punished for multiple convictions if during the course of that conduct he committed crimes of violence against different victims." (*Ibid.*)

This exception is derived from *People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905], which held that "[w]here multiple acts of violence occur against multiple victims, the course of conduct is divisible." (*Id.*, at p. 638, fn. 10.) Since robbery at gunpoint is a violent crime, and there were multiple victims in the bank robbery, the aforementioned exception precludes application of section 654.

Appellants attempt to circumvent this exception in contending that they were charged with five robberies against five tellers when there was actually a single taking of money from the Bank of America. They rely on *People* v. *Guerin* (1972) 22 Cal.App.3d 775 [99 Cal.Rptr. 573], where defendant held up a supermarket, taking money from two different cash registers, presided over by two different clerks. There, the court sustained robbery convictions on separate counts involving each clerk on the theory that the clerks had exercised actual dominion and control over the money, and each was a victim "of a separate taking and of a separate assault." (*Id.*, at p. 782.) However, the court reversed an additional conviction for robbery against the store manager since he was not the victim of a separate taking, and did not have actual possession or control of the stolen money. The conviction was then modified to assault with a deadly weapon on the grounds the manager was a victim of a separate assault. (*Id.*, at pp. 782-783.)

The facts in *Guerin* are slightly different from those relating to the bank robbery in the instant action. Here, we are faced with a situation

where there are five takings from separate bank tellers in actual, not constructive, possession of the money. As such, they were in a position similar to the checkers in *Guerin* who were recognized by that court as actual victims of multiple robbery counts.

■ By contrast, the multiple robbery counts against appellant Nelson for the taking of the pickup truck from victims Negoli and Lazar fall squarely within the proscription of *People v. Higgins* (1972) 28 Cal.App.3d 771 [104 Cal.Rptr. 925]. In *Higgins*, defendant was charged with two counts of robbery. At gunpoint, two clerks in a store handed defendant money from a single cash register. Relying on *Guerin*, the *Higgins* court held there was only one robbery. The court reasoned that "[w]hile, under the authorities discussed by us in *Guerin*, the People might lawfully have convicted on a robbery from Paula, had she been selected by the People as the only victim, they cannot inflate this single robbery into two offenses merely because the loot passed (in part) through two innocent hands. We affirm the conviction on count I (which involved Carolyn); we reduce the conviction on count II (which involved Paula) to a violation of subdivision (a) of section 245 of the Penal Code." (*Id.* at p. 775.)

In the present case, both victims were in possession of the same vehicle and were victims of a single taking. Therefore, the additional count charging Nelson for robbery of Negoli must be modified in light of the robbery conviction sustained against Lazar. Since both Negoli and Lazar were victims of an assault, the conviction on count III (robbery of Negoli) must be modified to assault with a deadly weapon pursuant to *Guerin*.[3]

Appellants' next contention, that the fifth count of bank robbery represents an inflated robbery charge against both Bank of America and teller Miller, is without merit. Relying on *People v. Higgins, supra*, they argue that Miller was merely an innocent conduit through which the loot passed; as such she should not have been separately named as a victim. (*Id.*, at p. 775.) However, *Higgins* is misplaced here.

In *Higgins*, the court held that defendant could not be convicted on two counts of robbery where two clerks manning one cash register were

---

[3]We note that sentencing on count III of information No. 98783 was stayed by the court below. Accordingly, it is merely the conviction and not the sentence which must be modified.

robbed merely because the loot passed through two innocent hands. (28 Cal.App.3d at p. 775.) In the present case, five separate tellers were robbed from five separate locations. Hence, there were no conduits.

    █ Appellants next contend the evidence is insufficient to support the verdicts finding them guilty of two of the robberies in the bank because the victims of those two robberies, Louis Quimson and Kimberly Miller, did not testify. Nelson's theory is that there is insufficient evidence of force or fear while Childs argues that there was insufficient and inadmissible evidence of the taking, or if there was a loss, no evidence Childs or Nelson took the money. We disagree.

    █ Although Childs and Nelson framed the issue differently—Nelson challenging the trial court's denial of his motion for acquittal, while Childs contending that there was insufficient evidence to support the verdicts—the tests are the same: "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; see also, *People* v. *Wong* (1973) 35 Cal.App.3d 812, 828 [111 Cal.Rptr. 314].)

    █ Given this standard, we find there was sufficient evidence to sustain a jury finding of force or fear inherent to the crime of robbery. Both appellants were in possession of guns at the time of the bank robbery; the weapons were out and pointed in the direction of the tellers and customers alike. Teller Miller, while not at her window during the robbery, was within "visual sight" of her window. As for teller Quimson, he was "right next to his (cash) can" at the time of the taking. Since both tellers were in the proximity of the robbers, both of whom were brandishing deadly weapons, a jury may well have reasonably concluded that force or fear was part of the corpus delicti.

    █ Childs' argument—that the bank audit was erroneously admitted into evidence to prove a taking—is not properly before this court on appeal. As appellant Childs recognizes, one generally may not raise on appeal the impropriety of evidence admitted, absent an objection below. (*People* v. *Anderson* (1974) 43 Cal.App.3d 94, 103 [117 Cal.Rptr. 507].) Nevertheless, relying on *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859], he argues that the failure of his trial attorney to object to the admission of such evidence deprived him of

effective assistance of counsel and a crucial meritorious defense. (*Id.*, at p. 425.)

The standard for review of competency of counsel is established as that course of action which a reasonably competent attorney might be expected to pursue. (*Ibid.*) Reviewing courts are not to engage in "the perilous process of second-guessing" counsel's informed choice among tactical alternatives. (*Id.*, at p. 426.) Where the record fails to indicate why counsel did or did not act in the manner challenged, the case should stand on appeal. (*Ibid.*) Since the record sheds no light as to the motive behind counsel's failure to make a hearsay objection, we are bound to affirm the robbery finding.[4]

Irrespective of the propriety of admitting the audit into evidence, there was still sufficient evidence to support the verdict. Theresa Siragusa testified that the robber opened teller Quimson's cash box and "took" money from it. All tellers indicated that Childs proceeded down the line of tellers taking money from open cash cans. Teller Miller was in visual sight of her station during the robbery and a bank photo indicated a customer was standing at her window. From these facts alone, a jury could reasonably conclude that Miller was manning her station during the crime, and that her cash box was open.

We further reject Nelson's argument that he was denied his right to confrontation because the two bank tellers (Miller and Quimson) and the owner of the pickup truck (Amirfar) failed to testify. Appellant fails to cite any authority for the proposition that all witnesses to and victims of a crime must testify. The Penal Code of this state provides only that in a criminal action the defendant is entitled to confront those witnesses who testify against him. (Pen. Code, § 686.)

During trial, appellant Childs interrupted the proceedings and following the trial court's excusal of the jury, expressed dissatisfaction with his trial counsel. The trial court then denied his request for dismissal of counsel, as well as his request to remain outside the courtroom during the proceedings.

---

[4]We cannot say as a matter of law that under *Pope* the trial counsel's failure to make a hearsay objection constituted incompetence. Counsel might have concluded that a hearsay objection to the audit would have been futile in light of the business records exception. (Evid. Code, § 1271.)

Following a recess, Childs resumed his requests to discharge trial counsel and to be absent during the proceedings. He refused to promise "not to disrupt the proceedings if he remained." After he knowingly and intelligently waived his right to confront witnesses, Childs' request to remain outside the courtroom was granted.

Appellant Nelson then moved for a mistrial on the grounds that the jury might draw some adverse inference against him from Childs' absence. The court denied the motion.

When the trial resumed, the trial court informed the jury that Childs was not present because he had waived his right to be present, had refused to remain in the courtroom and conduct himself in a gentlemanly fashion, and it was not the policy of the court to bring any defendant into the courtroom in shackles. The court admonished the jury not to infer or speculate anything from the fact that Childs was not present and that the jury should judge the case upon the evidence presented.

Both appellants claim reversible error occurred in these proceedings. Nelson argues that the court's denial of his motion for a mistrial constituted an abuse of discretion and deprived him of his right to a fair trial. Childs contends that the court's reference to "gentlemanly conduct" and to "shackles" was prejudicial misconduct.

Nelson's motion for mistrial was properly denied. It is well settled that a motion for a mistrial is addressed to the sound discretion of the trial court. (*People v. Romero* (1977) 68 Cal.App.3d 543, 548 [137 Cal.Rptr. 675].) It may be properly refused where the lower court is satisfied that no injustice has resulted or will result from the events of which the complaint ensues. (*People v. Slocum* (1975) 52 Cal.App.3d 867, 884 [125 Cal.Rptr. 442].)

Since the court properly admonished the jury not to draw adverse inferences from Childs' refusal to attend trial, and it is presumed the jury followed these admonitions (*People v. Sims* (1976) 64 Cal. App.3d 544, 555 [134 Cal.Rptr. 566]), the trial court properly found no prejudice to appellant Nelson. Furthermore, counsel for Nelson had the opportunity to request an instruction to the jury to disassociate Childs' absence from his own case. No such action was taken.

Since Nelson failed to give the court an opportunity to correct any false inference or impression drawn by the jury and there is no evidence

that a proper admonition could not have cured the prejudice, appellant may not now urge the point on appeal. (*People* v. *Terry* (1970) 2 Cal. 3d 362, 398 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Wrigley* (1968) 69 Cal.2d 149, 164 [70 Cal.Rptr. 116, 443 P.2d 580].)

■ For similar reasons, Childs' contention that the court's comment on his behavior was prejudicial is improperly before us. The court, upon counsel's request, could have given an additional admonition to the jury not to let Childs' disorderly conduct influence their decision. This was not requested. Absent any showing that the court's comments resulted in incurable prejudice, we may not consider this point on appeal. (*People* v. *Terry, supra*, at p. 398.)

Appellants next challenge certain procedures in sentencing.

■ Appellant Nelson contends that the lower court improperly used the same facts (firearm use) to both aggravate and enhance the sentence against him for the bank robbery. (Pen. Code, § 1170, subd. (b); rule 441 of the Cal. Rules of Court.)

We recognize that the trial court is bound under section 1170, subdivision (b), not to impose an upper base term of a determinate sentence by using the same facts to enhance the sentence under section 12022.5. However, we find the court below clearly set forth separate facts and reasons for imposing an "aggravated" term: "The crimes committed here involved a threat of great bodily harm and injury. [Rule 421, subd. (a)(1).] [¶] Also, the crime involved an attempt to take large sums of money and contraband [rule 421, subd. (a)(10)], and, further that the crime showed planning, premeditation and professionalism [rule 421, subd. (a)(8)]."

Therefore, the court properly complied with both the statutory prescription of section 1170, subdivision (b), and the guidelines of the California Rules of Court.

Nelson's urgence on appeal that the court failed to satisfy section 1170, subdivision (c), and rule 443 of the California Rules of Court is equally without merit. These authorities require the court to state its reasons for its sentencing choice on the record at the time of sentencing. As indicated above, the trial court gave as reasons for imposing the aggravated sentence the elements of threat of injury, attempt to take large sums of money, and planning in commission of the crime. As a basis for

imposing consecutive sentences, the court indicated that the crimes were multiple and involved separate acts of violence.

■ Nelson also contends that the trial court's imposition of an eight-month enhancement for firearm use in connection with the robbery of the pickup truck was erroneous. We agree.

In *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], our Supreme Court held that in imposing enhancements on consecutive offenses, subdivision (a) of section 1170.1[5] permits enhancement only for those specific offenses listed in subdivision (c) of section 667.5. Since robbery with a firearm use is not specifically listed in that latter section, enhancement is improper. (*Id.*, at p. 761.)

■ Childs contends that he was improperly sentenced under Penal Code section 1170.1. This section provides in pertinent part: "In no case shall the total of subordinate terms for consecutive offenses not listed in subdivision (c) of Section 667.5 exceed five years." Childs was sentenced to four years for the upper base term of robbery, two years for gun use enhancement on this base term, five years and eight months for convictions on counts II, III, IV, V and VI of information No. 98509, and eight months for conviction on count I of information No. 98783 (attempted robbery of Floyd De'Eds). While the aggregate six years for the upper base term plus enhancement was correct, it was error to add more than five years for consecutive sentences. Although *People v. Harvey, supra*, dealt specifically with the validity of enhancements for firearm use in consecutive sentences, we see no reason to confine its rea-

[5]Subdivision (a) of section 1170.1, in effect at the time of the offenses committed here, provided: "(a) Except as provided in subdivision (b) and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5 .... The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section[s] 12022, 12022.5, 12022.6, [and] 12022.7. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of Section 667.5, but shall include one-third of any enhancement imposed pursuant to Section 12022, 12022.5 or 12022.7 when the consecutive offense is listed in subdivision (c) of Section 667.5. In no case shall the total of subordinate terms for consecutive offenses not listed in subdivision (c) of Section 667.5 exceed five years."

soning to issues of enhancement. Even though the final sentence of subdivision (a) of section 1170.1 deals with subordinate terms for consecutive offenses and not merely enhancement of those terms, it refers to section 667.5, a statute exclusively concerned with enhancements. If subordinate terms for consecutive robberies cannot be enhanced, they cannot be considered exceptions to the five-year limitation for consecutive sentences.

Respondent argues that in light of recent legislation[6] reaffirming the application of section 667.5, subdivision (c)(8) to subordinate sentences and disavowing the *Harvey* holding, *Harvey* should not apply to the instant action. Respondent cites section 1, subdivision (c) of Assembly Bill No. 2123[7] for the proposition that it had always been the intention of the Legislature to include those offenses appearing in section 667.5, subdivision (c)(8) as exceptions to enhancements and the five-year limitation on subordinate consecutive sentences under section 1170.1, subdivision (a).

There is a split in authority as to whether such a legislative act constitutes new law. While the court in *Matter of Coburn* (1913) 165 Cal. 202, 209 [131 P. 352] construed such an act as a directive for future courts, the court in *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200 [114 P.2d 592], held a legislative attempt at removing ambiguity from a predecessor statute did not give a retroactive effect to a statute but merely supplied "an indication of the legislative intent which may be considered together with other factors in arriving at the true intent existing at the time the legislation was enacted...." (*Id.*, at p. 204.)

It is well established that the ultimate interpretation of a statute is an exercise of judicial power. (*Bodinson Mfg. Co.* v. *California E.*

---

[6]On May 29, 1980, Assembly Bill No. 2123 (Stats. 1980, ch. 132) amending section 1170.1, subdivision (a), was signed into law. As amended the statute now reads: "...In no case shall the total of subordinate terms for such consecutive offenses which are not 'violent felonies' as defined in subdivision (c) of Section 667.5 exceed five years. The subordinate term for each consecutive offense which is a 'violent felony' as defined in subdivision (c) of Section 667.5, including those offenses described in paragraph (8) of subdivision (c) of Section 667.5, shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of any enhancements imposed pursuant to Section 12022, 12022.5, and 12022.7."

[7]Section 1, subdivision (c) of Assembly Bill No. 2123 provides: "This act is intended to clarify and reemphasize what has been the legislative intent since July 1, 1977."

*Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935]; see also, *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) ▮ Accordingly, the *Harvey* decision must be considered the correct interpretation of section 667.5 prior to the May 19th amendment, and subsequent legislative interpretation cannot change the meaning of the statute.

Section 3 provides that no part of the Penal Code "is retroactive, unless expressly so declared." Therefore, as a matter of statutory construction, an amendment to a penal statute which increases punishment cannot be applied retroactively in the absence of an express legislative declaration. (*People v. Teron* (1979) 23 Cal.3d 103, 118-119 [151 Cal.Rptr. 633, 588 P.2d 773]; *In re Harper* (1979) 96 Cal.App.3d 138, 140-141 [157 Cal.Rptr. 759].)

Although section 1, subdivision (c) of Assembly Bill No. 2123 states that the act is "intended to clarify and reemphasize what has been the legislative intent since July 1, 1977," section 4 merely states that the bill is to take "immediate effect." If the Legislature intended the amendment to have a retroactive effect, it should have expressly so declared. Accordingly, we find that the *Harvey* decision must apply to offenses committed prior to May 29, 1980. (Accord, *People v. Matthews* (1980) 108 Cal.App.3d 793, 796 [167 Cal.Rptr. 8].)

▮ Childs also argues that the trial court abused its discretion in rendering unstayed consecutive sentences to a 22-year-old, first-time offender. Relying on Justice Mosk's dissent in *People v. Giminez* (1975) 14 Cal.3d 68 [120 Cal.Rptr. 577, 534 P.2d 65], Childs asks this court to impose the "least drastic alternative" test in determining its sentence. (*Id.*, at p. 77.)

Although we sympathize with Justice Mosk's critique of the prison system and its tendency to "breed, rather than curb, crime," we are not authorized to modify a sentence absent error. (*People v. Giminez, supra*, at p. 72.) While the *Giminez* court conceded that the concept of judicial discretion is difficult to define with precision, it went on to set forth the following standard in reviewing the trial court's sentence: "...in the absence of a clear showing that its sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives and, accordingly, its discretionary determination to impose consecutive sentences ought not be set aside on review." (*Ibid.*)

Turning to the instant case, we find nothing arbitrary or irrational in the trial court's sentencing decision to indicate an abuse of discretion. Childs perpetrated a series of armed, violent crimes against numerous victims. The court recognized that the potential for serious injury or death to innocent bystanders, as well as the intended victims, was great at any point along the way. Accordingly, we cannot set aside the sentence for reasons of age and inexperience.

Finally, appellants both contend that they are entitled to good time/work time credit for the days they spent in presentence custody. *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874] held that to deny the "detainee/felon" conduct credit for presentence jail time constitutes a denial of equal protection of the law. Insofar as such credit is extended to "detainee/misdemeanants" under section 4019 of the Penal Code, there is no rational basis for, much less a compelling state interest in denying presentence conduct to detainee/felons.

The judgment is affirmed with the exception that Nelson's conviction on count III of information No. 98783 is modified to assault with a deadly weapon. The cause is remanded to the trial court for resentencing in accordance with the views expressed in this opinion.

Rouse, Acting P. J., and Smith, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 11, 1981.