[No. D037855. Fourth Dist., Div. One. Feb. 6, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY LEWIS FRAZER, Defendant and Appellant

**[Opinion certified for partial publication.\*]**

*This opinion is certified for publication with the exception of parts II. and III.

COUNSEL

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Rhonda L. Cartwright-Ladendorf, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HALLER, J.—Anthony Lewis Frazer was convicted of eight counts of robbery based on the robbery of two stores where eight employees were present. He contends the judgment should be reversed because (1) a special instruction given to the jury removed the elements of possession and immediate presence for robbery when the victim was an employee; (2) the jury was not presented with the theory of an employee's constructive possession of the employer's property; and (3) there was insufficient evidence that nonmanagerial employee victims constructively possessed the stolen property. He also asserts his out-of-court admissions were erroneously admitted because he did not knowingly and intelligently waive his *Miranda* rights before the law enforcement interrogation. We reject his contentions of error and affirm the judgment, except as to a sentencing enhancement error conceded by the People.

In the published portion of this opinion, we hold that employee status does not alone establish constructive possession of an employer's property for purposes of satisfying the possession element of robbery. Rather, for an employee who does not have actual possession of the property, the record must show indicia of the employee's express or implied authority over the property. However, we reject Frazer's contentions of error because the instructions adequately apprised the jury of the controlling legal principles, and there was sufficient evidence to support findings of constructive possession.

### FACTUAL AND PROCEDURAL BACKGROUND

Frazer was convicted of eight robberies which occurred at two different Kragen Auto Parts stores on two occasions (the first on Nov. 4, 1999, on

Convoy Street, and the second on Dec. 10, 1999, on Euclid Avenue). One victim at each store was the manager who could open the safe containing the money, and the remaining six victims were nonmanagerial employees who were present during the robbery. He was also convicted of a petty theft committed on July 19, 2000, at a Kmart. The jury deadlocked on four charges arising from a third robbery on March 8, 2000, at the Euclid Kragen Auto Parts store, which were dismissed.[1]

Based on two prior serious or violent felony convictions, Frazer was sentenced under the "Three Strikes" law (Pen. Code, § 667, subds. (b)-(i)),[2] to 25 years to life for one of the robberies, with concurrent 25-year-to-life sentences for the remaining robberies and the petty theft with a prior. A one-year consecutive enhancement for a prior prison term (§ 667.5, subd. (b)), and a five-year consecutive enhancement for a prior serious felony conviction (§ 667, subd. (a)(1)) were imposed, for a total term of 31 years to life.

*November 4, 1999 Robbery of Kragen Auto Parts on Convoy Street*

On November 4, 1999, assistant manager Salvador Serrano was working at the Kragen Auto Parts store on Convoy Street with a crew of four other employees, Mike O'Reilly, John Volpe, Julian Escamilla, and Donald Klaus. Klaus, who was a college student, and Escamilla and Volpe, who were in the Marines, worked part time at Kragen. Serrano and Klaus were scheduled to work "the floor" that night, i.e, running the store by helping customers.

It was also "weekly truck night" when the store received merchandise, so employees O'Reilly, Escamilla, and Volpe were working as the "truck crew" to put merchandise away while the store was still open. Escamilla was in the back of the store in an area not available to customers stocking brake shoes when the robbery commenced. Volpe, O'Reilly, and assistant manager Serrano were in the aisles putting parts away. The only person who could open the safe was Serrano.

Frazer and an accomplice entered the store. As is customary when working the floor, Klaus greeted them and asked how he could help. The men asked for freeze plugs. Klaus walked behind the parts counter to look up their vehicle year in the computer. The accomplice began pushing Serrano,

---

[1]Unlike the other Kragen robberies, at the March 2000 Kragen robbery the robber wore a ski mask.

[2]All subsequent statutory references are to the Penal Code.

put a gun[3] to his head, and screamed that Serrano should tell him where the safe was and identify the manager. The accomplice kept the gun on Serrano's head and forced him to walk to the safe located in the front of the store. Serrano was having trouble opening the safe and the accomplice screamed at him to hurry up if he wanted to see his kids. As Serrano was putting the money from the safe into a bag, the accomplice yelled that Serrano should give him all the money, that the robbers were wanted in three states, and if the employees "screw[ed]" with them, the robbers would kill all the employees.

When employee O'Reilly saw the accomplice with the gun, O'Reilly immediately went down on the floor. Frazer, holding his hand at his belt as if he was carrying a weapon, instructed employees Klaus, Volpe, and Escamilla to get down on the floor. As the employees were lying on the floor, they could hear that Serrano was having trouble opening the safe and heard the accomplice screaming at him to hurry up. Frazer told the employees on the floor to keep their heads down or the robbers would "spray [them] all." As the robbers were leaving, they told the employees that if they came after them, the robbers would kill all of them.

*December 10, 1999 Robbery of Kragen Auto Parts on Euclid Avenue*

On December 10, 1999, employees Carmen Campa, Oscar Ortiz, and Jorge Gabriel Naranjo were working on the computers at the parts counter at the Kragen Auto Parts store on Euclid Avenue when Frazer entered the store. Frazer asked for the manager, and Ortiz identified himself as the manager even though he was not. Frazer pulled out a gun and said it was a robbery. He put the gun in Ortiz's side and shoved him towards the back. All three employees walked with Frazer to the area where the safe was located. Naranjo opened the combination lock on the safe, and Campa and Ortiz lay on the floor as ordered by Frazer. Naranjo gave Frazer the money from the safe, and then the money from the cash register.

*Frazer's Arrest and Interrogation*

On July 19, 2000, an undercover security officer made a citizen's arrest of Frazer after observing him steal two watches from a Kmart store in Rancho San Diego. A deputy sheriff took custody of Frazer, obtained a *Miranda* waiver and questioned him about the Kmart theft; he then turned Frazer over to the custody of San Diego police detectives. The San Diego police had received information from Frazer's girlfriend possibly tying Frazer to certain

---

[3]Apparently the gun used in both Kragen robberies turned out to be a pellet gun.

Kragen robberies.[4] Three hours later, after asking if Frazer remembered the earlier advisal of his rights, the San Diego police conducted a videotaped interrogation which lasted about two and one-half hours. During the questioning Frazer made admissions regarding the charged robbery offenses. The videotape was shown to the jurors.

## DISCUSSION

### I. *Multiple Robbery Convictions*

The jury was given a standard instruction defining the elements of robbery (including possession and immediate presence), and a special instruction stating an employee need not have the stolen property "in their immediate control and possession."

Frazer argues: (1) the special instruction removed the elements of possession and immediate presence from the definition of robbery; (2) the jury was not presented with the theory of constructive possession needed to support the convictions based on the six nonmanagerial employees; and (3) even if the jury was presented with the theory of constructive possession, there was insufficient evidence of constructive possession by the six nonmanagerial employees.

To evaluate his arguments, we first review the law governing constructive possession by employees.

### A. *Legal Principles Regarding Employee Constructive Possession*

Section 211 defines robbery as the "taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." ▮ Employees can be victims of robbery, based on constructive rather than actual possession of the employer's property. (*People v. Jones* (1996) 42 Cal.App.4th 1047, 1053 [50 Cal.Rptr.2d 46] (*Jones I*).) Actual possession requires direct physical control, whereas constructive possession can exist when a person without immediate physical control has the right to control the property, either

---

[4] There were a series of Kragen robberies occurring during this time period in addition to the three charged in the instant case. The girlfriend, who was angry with Frazer at the time, told the detective she had seen Frazer's photo on a *Crime Stoppers* television show. She showed physical evidence to the police, including items of property Frazer brought to her house from a Kragen Auto Parts store in Lemon Grove that had been robbed, the toy gun she said Frazer had used in the Kragen robberies, and her black Ford Escort that she let Frazer use and that was consistent with the vehicle described at some Kragen robberies not charged in the instant case. The girlfriend recanted most of her statements at trial.

directly or through another person. (*Id.* at p. 1052, fn. 3.) Based on constructive possession, an employee may be a victim of robbery even though he is not the owner and not at the moment in immediate control of the property. (*People v. Miller* (1977) 18 Cal.3d 873, 880 [135 Cal.Rptr. 654, 558 P.2d 552]; accord, *People v. Nguyen* (2000) 24 Cal.4th 756, 761, 762 [102 Cal.Rptr.2d 548, 14 P.3d 221].) More than one employee may constructively possess the property at the same time. (*People v. Miller, supra,* 18 Cal.3d at p. 881.)

The courts have found employees possessed their employer's property even when the particular employees could not personally access the stolen property because of their job functions. (*People v. Downs* (1952) 114 Cal.App.2d 758, 765-766 [251 P.2d 369] [two janitors left in sole occupation of premises deemed to possess cash stolen from safe]; *People v. Dean* (1924) 66 Cal.App. 602, 607 [226 P. 943] [two janitors who were also watchmen deemed to possess cash from safe].) The courts reasoned that the employees were rightfully in possession of the place of employment and its contents and were entitled to possession as against the defendant. (*People v. Dean, supra,* 66 Cal.App. at p. 607.)

In years past, however, the cases usually involved only *one* robbery count and conviction, even if there were multiple employee victims. (See, e.g., *People v. Miller, supra,* 18 Cal.3d at pp. 877-879, 880-881 [one robbery conviction for jewelry stolen from store; victims were salespersons and security guard]; *People v. Arline* (1970) 13 Cal.App.3d 200, 202 [91 Cal.Rptr. 520], disapproved on another ground in *People·v. Hall* (1986) 41 Cal.3d 826, 834 [226 Cal.Rptr. 112, 718 P.2d 99] [one robbery conviction for cash stolen from cashbox; victims were two automobile mechanics]; *People v. Downs, supra,* 114 Cal.App.2d at pp. 765-766; *People v. Dean, supra,* 66 Cal.App. at p. 607.) Multiple robbery convictions were typically sustained only if there were distinct takings from different employees. (See, e.g., *People v. Guerin* (1972) 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573] [two robbery convictions for taking of cash from two different cash registers controlled by two different employees]; *People v. Childs* (1980) 112 Cal.App.3d 374, 383 [169 Cal.Rptr. 183] [five robbery convictions for five takings from five bank tellers].)

However, the landscape of robbery changed in 1982, when our Supreme Court in *People v. Ramos* (1982) 30 Cal.3d 553, 587 [180 Cal.Rptr. 266, 639 P.2d 908], reversed on other grounds in *California v. Ramos* (1983) 463 U.S. 992 [103 S.Ct. 3446, 77 L.Ed.2d 1171], held that a *single taking* of property from the joint possession of two victims constituted *two* robberies, overruling contrary holdings in such cases as *People v. Guerin, supra,* 22

Cal.App.3d at p. 782, and *People v. Higgins* (1972) 28 Cal.App.3d 771, 773-775 [104 Cal.Rptr. 925]. In *Guerin*, the appellate court had upheld two robbery convictions arising from the taking of cash from two registers controlled by two store clerks, but reversed a third robbery conviction as to the store manager who had constructive possession of the money in both registers. (*People v. Guerin, supra*, 22 Cal.App.3d at p. 782.) Similarly, in *Higgins*, the appellate court allowed only one of two robbery convictions to stand based on a taking from one cash register controlled by two store clerks. (*People v. Higgins, supra*, 28 Cal.App.3d at pp. 773-775.)

In overruling these holdings, *Ramos* reasoned multiple takings were not required to sustain multiple robbery convictions. (*People v. Ramos, supra*, 30 Cal.3d at p. 589.) Rather, *Ramos* concluded that when two persons in joint possession of a single item of property were subjected to force or fear, two robbery convictions were proper. (*Ibid.*)

Thus, in more recent times, the courts have had to evaluate the impact of the *Ramos* rule supporting a robbery conviction for each person jointly possessing property and subjected to force or fear, juxtaposed with the rule that employees may be deemed to have constructive possession of the employer's property.

In partially overruling *Guerin*, *People v. Ramos* did not discuss an additional component of *Guerin*'s holding, wherein the appellate court reversed a robbery conviction as to a box boy employee who was present during the robbery but who was not shown to have any control over the stolen money. (*People v. Guerin, supra*, 22 Cal.App.3d at p. 782.) The court in *Guerin* stated: "We can find nothing, other than that he was a co-employee of the other three, to suggest that he had any dominion or control whatsoever over any money." (*Ibid.*)

In contrast, *Jones I, supra*, 42 Cal.App.4th at pages 1054-1055, held that a separate robbery conviction as to a store truck driver, present during a robbery of cash along with employees who handled the cash, could be sustained. Referring to the rule that an employee who does not have actual possession must act in some representative capacity with respect to the owner so as to have express or implied authority over the item taken, the court in *Jones I* concluded that the store truck driver had "sufficient representative capacity with respect to the owner of the property to be the victim of a robbery." (*Id.* at p. 1054.) The court in *Jones I* observed that the holding in *Guerin* that the box boy had insufficient authority over the stolen property may have been due to his adolescence, but if not so distinguishable on its facts, the court in *Jones I* disagreed with the *Guerin* holding.

A dissent in *Jones I*, citing *Guerin*, concluded there were no circumstances in the case showing the store truck driver had implied authority over the property. (*Jones I, supra*, 42 Cal.App.4th at p. 1057 (dis. opn. of Johnson, J).)

*People v. Jones* (2000) 82 Cal.App.4th 485, 491 [98 Cal.Rptr.2d 329] (*Jones II*), goes a step further than the majority opinion in *Jones I*, characterizing *Guerin*'s holding regarding the box boy as an "anomaly." *Jones II* concludes "business employees—whatever their function—have sufficient representative capacity to their employer so as to be in possession of property stolen from the business owner." (*Jones II, supra*, 82 Cal.App.4th at p. 491.) Accordingly, *Jones II* upholds attempted robbery convictions as to employees who did not have access to the cash room from which cash was stolen, including a personnel manager, sales associate, pantry clerk, and inventory clerk. (*Id.* at pp. 488-489.)

The holding in *Guerin* stands for the proposition that employee status alone is not enough to give an employee constructive possession of his employer's property for purposes of supporting a separate robbery conviction. In direct conflict, *Jones II* concludes that employee status, regardless of function, *is* alone enough to confer constructive possession. The dissent, and to a limited extent the majority opinion in *Jones I*, support a more fact-based inquiry, i.e., an evaluation of the circumstances of the case to determine if the particular employee has sufficient representative capacity to be deemed to have implied authority over the item taken.

In *People v. Nguyen, supra*, 24 Cal.4th at page 762, our Supreme Court recently summarized the evolving judicial interpretation of the crime of robbery, noting that "the theory of constructive possession has been used to expand the concept of possession to include employees and others as robbery victims . . . ." *Nguyen* sets forth in dicta the statement in the majority opinion in *Jones I, supra*, 42 Cal.App.4th at page 1054, that the store truck driver had "sufficient representative capacity with respect to the owner of the property to be the victim of robbery." (*People v. Nguyen, supra*, 24 Cal.4th at p. 761.) The issue in *Nguyen* was whether a *visitor* at a business could be a robbery victim, and the court held it was improper to instruct the jury in a manner which removed the element of possession from the crime of robbery so as to allow a conviction merely based on a forceful taking in the presence of the visitor. (*Id.* at pp. 759, 762-765.) However, *Nguyen* was not presented with, nor does it address, the issue of the appropriate standard to evaluate an employee's constructive possession.

The opinion in *Jones II*, rendered before *Nguyen*, cites in its analysis *People v. Mai* (1994) 22 Cal.App.4th 117 [27 Cal.Rptr.2d 141], the case

overruled by *Nguyen* as improperly dispensing with the requirement of possession. (*Jones II, supra*, 82 Cal.App.4th at p. 490; *People v. Nguyen, supra*, 24 Cal.4th at p. 762.) Given our Supreme Court's reiteration in *Nguyen* of the importance of the element of possession to support a robbery conviction, we conclude a fact-based inquiry regarding constructive possession by an employee victim is appropriate. That is, we conclude the proper standard to determine whether a robbery conviction can be sustained as to an employee who does not have actual possession of the stolen property is whether the circumstances indicate the employee has sufficient representative capacity with respect to the owner of the property, so as to have express or implied authority over the property. Under this standard, employee status does not alone as a matter of law establish constructive possession. Rather, the record must show indicia of express or implied authority under the particular circumstances of the case. To illustrate, a janitor may well be deemed to have implied authority if all other employees who handle the cash are gone. (*People v. Downs, supra,* 114 Cal.App.2d at pp. 765-766.) On the other hand, by virtue of his job title charging him with guarding the premises, a security guard may be deemed to have authority even when other employees who handle the property are present. (*People v. Miller, supra,* 18 Cal.3d at pp. 880-881.)

## B. *Instructions*

With these principles in mind, we evaluate Frazer's contention the jury was improperly and inadequately instructed.

### 1. *Special Instruction on Employee Possession*

The jury was given the standard instruction for robbery contained in CALJIC No. 9.40: "Every person who takes personal property *in the possession of another*, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive that person of the property, is guilty of the crime of robbery in violation of Penal Code section 211. [¶] 'Immediate presence' means an area within the alleged victim's reach, observation or control, so that he or she could, if not overcome by violence or prevented by fear, retain possession of the subject property. [¶] 'Against the will' means without consent. In order to prove this crime, each of the following elements must be proved: [¶] 1. A person had *possession of property* of some value however slight; [¶] 2. The property was taken from that person or from his or her immediate presence; [¶] 3. The property was taken against the will of

that person; [¶] 4. The taking was accomplished either by force or fear; and [¶] 5. The property was taken with the specific intent permanently to deprive that person of the property." (Italics added.)

A special instruction was also given: "Any employee confronted and exposed to force or fear can be the victim of a robbery *even without personal property in their immediate control and possession.*" (Italics added.)

 ██ ██ Frazer argues that the special instruction removed the element of possession from the definition of robbery because it told the jury that as long as the victim was an employee, then the requirement of possession no longer applied.[5] ██ We disagree. The instruction tells the jury that employees may be victims even when the property is not in their "*immediate* control and possession." (Italics added.) Particularly given the clear and twice repeated statement in CALJIC No. 9.40 read to the jury that possession is an essential element that must be proven, reasonably intelligent jurors would have understood that the word "immediate" qualified the word "possession" as well as the word "control." Thus, the special instruction did not tell the jury that the employee need not possess the property, but rather that the employee need not *immediately* possess the property. That is, the jury was properly told that an employee who is not immediately handling (i.e., controlling and possessing) the stolen property may still be found to possess the property. Although not a model of clarity, the special instruction was a proper statement of the law. (*People v. Miller, supra,* 18 Cal.3d at p. 880 [employee may possess employer's property even if not in immediate control of the property].)

Frazer's assertion that the special instruction given in his case contains an error comparable to the erroneous instruction given in *Nguyen* is incorrect. The *Nguyen* special instruction stated: " 'To be a victim of robbery, however, a person need not own, possess, be in control of, or even have the right to possess or control the property sought by the perpetrator. A victim may be an employee or visitor who becomes subject to the application of force or fear utilized to obtain the property of another person, owner of a business or employee.' " (*People v. Nguyen, supra,* 24 Cal.4th at p. 759.) Unlike the *Nguyen* instruction which expressly told the jury the victim of a robbery need not possess or be in control of the stolen property, the instruction given here merely explained that the possession and control need not be immediate.

---

[5] Frazer's counsel's failure to object does not waive his challenge on appeal because it pertains to the trial court's sua sponte duty to instruct correctly on the basic principles of law applicable to the case. (*People v. Smithey* (1999) 20 Cal.4th 936, 976-977, fn. 7 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; *People v. Oden* (1987) 193 Cal.App.3d 1675, 1683 [239 Cal.Rptr. 232].)

We agree with Frazer that for purposes of clarity the trial court should have defined constructive possession for the jury,[6] and then given a special clarifying instruction.[7] The jury was not expressly told that possession can include constructive possession based on the *right to control* rather than direct physical control at the moment. Nevertheless, the special instruction, by telling the jury that an employee who is not "in immediate control and possession" of the property can still be a victim, impliedly told the jury that possession may arise when there is a right to control (i.e., nonimmediate control and possession) as opposed to physical control. Thus, any error in this regard was harmless because the instructions as given adequately apprised the jury of the governing legal principles that the employees must have possessed the stolen property, although the possession could be constructive in that the control and possession did not need to be immediate. (See *People v. Dieguez* (2001) 89 Cal.App.4th 266, 277-278 [107 Cal.Rptr.2d 160] [instructional error which does not remove material issues from jury does not require reversal unless it is reasonably probable a more favorable result would have been reached].)

The prosecution's closing argument also indicates the harmlessness of any instructional error arising from lack of clarity in the instructions. The prosecution acknowledged the essential element of possession, and although arguing all the employees had constructive possession, the prosecution did *not* suggest that employee status eliminated the need to prove possession. Rather, the prosecution confined its argument to the concept that the property need not be in the employee's immediate control or possession—i.e., the employees did not have to have the cash on their person, as long as they could access it through the manager.[8]

---

[6]CALJIC No. 1.24 explains the difference between actual and constructive possession: "There are two kinds of possession: actual and constructive possession. [¶] Actual possession requires that a person knowingly exercise direct physical control over a thing. [¶] Constructive possession does not require actual possession but does require that a person knowingly exercise control or the right to control a thing, either directly or through another person or persons. [¶] One person may have possession alone, or two or more persons together may share actual or constructive possession."

[7]The special instruction given in *Jones I* is clearer than the special instruction given in this case. The jury in *Jones I* was given the standard constructive possession instruction, and then specially instructed that " 'A store employee may be the victim of a robbery even though he or she is not its owner and not at the moment in immediate control of the stolen property.' " (*Jones I, supra,* 42 Cal.App.4th at p. 1052.)

[8]The prosecution argued: "Now, possession is sort of a legal term of art . . . . [¶] . . . [W]e're talking about . . . not just the merchandise of Kragen stores, but also the money that was in the safe, the money that was used in the daily operations of the store. [¶] Now, each of the employees in essence had possession of the money that was in the safe. You'll be told that any employee confronted and exposed to force or fear can be the victim of a robbery even without the person, property or cash in their immediate control or possession. *In other words,*

## 2. *Immediate Presence*

■ Frazer also argues that the special instruction removed the element of "immediate presence" from the jury's consideration. Again, we disagree. As the jury was instructed, the concept of presence does include the concept of control, in that presence can encompass an area within the victim's "reach, observation or control, so that he or she could, if not overcome by violence or prevented by fear, retain possession of the subject property." The reference to control in the definition of immediate presence refers to " ' "an area within which the victim could reasonably be expected to exercise some physical control over [her] property." ' " (*People v. Hayes* (1990) 52 Cal.3d 577, 627 [276 Cal.Rptr. 874, 802 P.2d 376].) The special instruction telling the jury that the property need not be in the employee's "immediate control and possession" does not on its face refer to this "control" aspect of immediate presence.

Nor do we believe the jurors would have implied a connection between the special instruction and the immediate presence instruction. Reasonably intelligent jurors would understand that "immediate presence" refers to the location of the employee in relation to the property, whereas "immediate control and possession" in the special instruction refers to the employee's right to use or access the property. CALJIC No. 9.40 twice informed the jury of the requirement of immediate presence and the special instruction does not detract from that requirement.

### C. *Sufficiency of the Evidence*

As indicated above, although for purposes of clarity the trial court should have given a constructive possession instruction in conjunction with the special instruction, any error was harmless because the jury was adequately apprised of the rule that employees can possess their employer's property even if they are not immediately handling it. Thus, we reject Frazer's argument that the jury was not presented with the theory of constructive possession and the only convictions that can be sustained are those premised on the managers' actual possession of the property.

■ As an alternative argument, Frazer asserts there is insufficient evidence to sustain the robbery convictions based on the constructive possession of the six nonmanagerial employees. He asserts there was no evidence these employees had access to the stolen money.

*you don't have to have it in your pocket. You simply have to have access to it in some fashion or another.* Any of those employees, if they needed more quarters or more twenties out of their safe, they had access to that cash through the manager. And so it's not required that they have it actually on their person in order for them to be the victim of a robbery. They were all constructively in possession of the cash and not just the registers but also the safe because they had access to it. And so you'll be specifically instructed on that point." (Italics added.)

To evaluate a challenge to the sufficiency of the evidence, we evaluate the entire record and draw all reasonable inferences in support of the judgment, to determine whether there is evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wader* (1993) 5 Cal.4th 610, 640 [20 Cal.Rptr.2d 788, 854 P.2d 80].)

As the prosecution acknowledged in closing argument, the record suggests the only persons who could open the safes at the Kragen stores were the managers (Serrano and Naranjo). However, to the extent nonmanagerial employees could access the cash registers and/or product inventory in order to service the customers, they could reasonably be deemed in constructive possession of the money in the safe via their access to the manager. That is, the entire retail team could reasonably be viewed as having implied authority over whatever property was necessary to handle the sales, including the money in the safe through the manager.

Regarding the Convoy Street Kragen store, the record shows there were two employees assigned to service the customers (manager Serrano and part-time employee Kraus), and three employees assigned to stock the shelves because it was "weekly truck night." Serrano testified that the night of the robbery he "had a crew working" with him, making no distinction between the functions of the crew. Serrano, who was scheduled to service the customers that night, testified he was putting parts away when the robbery commenced. Employee O'Reilly, who was on the "truck crew" that night, described the practice of greeting and offering to help customers as they walked in.[9] Given these indications of overlap between the functions of the "truck crew" and the employees servicing the customers, the jury could reasonably infer that the entire staff interchangeably stocked shelves, serviced the customers, and had access to the cash registers and (via the manager) the safe, with their primary duties depending on how they were scheduled for that particular shift.

Regarding the Euclid Avenue Kragen store, all three employees were working on the computers at the parts counter. This evidence supports an

---

[9]When describing Klaus's greeting of Frazer and the accomplice when they entered the store, O'Reilly testified: "We always greet the people when they come in and ask them if we can help them . . . ."

O'Reilly testified that he was an assistant manager at Kragen at the time of trial, but did not indicate whether he held this position at the time of the robbery.

inference that they were all part of the retail team, with constructive possession of the money in the cash register and, through the manager, the money in the safe.[10]

Based on the evidence in the record that all the Kragen employees worked together as a retail team, there is sufficient evidence to support a jury finding beyond a reasonable doubt that all the employees had implied authority over, and therefore constructively possessed, the money that was stolen.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The case is remanded to the trial court with directions to strike the one-year enhancement for the second prior prison term under section 667.5, subdivision (b), and to send to the Department of Corrections a corrected abstract of judgment. In all other respects, the judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

On March 13, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 21, 2003. Baxter, J., and Moreno, J., were of the opinion that the petition should be granted.

---

[10]Employee Campa was also present during the March 2000 Euclid Kragen robbery (the deadlocked counts), at which time she was working at the cash register.

*See footnote, *ante*, page 1105.